Wallis D. CORNELLA

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, CIV79–5041.

No. CIV79–5041.

United States District Court, D. South Dakota.

Dec. 15, 1982.

See also, D.C., 545 F.Supp. 918.

Black Hills Legal Services, Inc., Rapid City, S.D., for plaintiff.

Philip N. Hogen, U.S. Atty., D. S.D., Sioux Falls, S.D., for defendant.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

### I.

This matter is before the Court on application by Wallis D. Cornella (Plaintiff), by and through his legal representative, Black Hills Legal Services, Inc., for an allowance of attorney fees and other expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 and 5 U.S.C. § 504.[1] Plaintiff asserts, *inter alia*, that he was the prevailing party in the instant case and that the position of the United States was not substantially justified.[2]

Plaintiff originally brought the above-entitled action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Secretary of Health and Human Services (Secretary) denying Social Security disability benefits for the period August 13, 1977 to February 19, 1979. By Memorandum Opinion and Order, this Court held on

---

[1] The EAJA amended Titles 5 and 28 of the United States Code.

[2] More specifically, Plaintiff contends in his supporting memorandum 1) that the EAJA provides for an award of fees from the commencement of this action, which commencement occurred before the EAJA became effective on October 1, 1981, 2) that the EAJA applies to claims filed pursuant to Title II of the Social Security Act, and 3) that the government's position at no time has been substantially justified.

August 13, 1982, that the Secretary's final decision was not supported by substantial evidence and that Plaintiff was entitled to disability benefits as a matter of law.

The Secretary opposes Plaintiff's application for attorney fees and other expenses on the following grounds:

1. The EAJA does not apply to claims filed pursuant to Title II of the Social Security Act.

2. The EAJA does not provide for an award of fees for services performed prior to its effective date, October 1, 1981.

3. The EAJA does not provide for an award of fees for services performed at the administrative level.

4. The EAJA precludes an award of fees because the Secretary's position was substantially justified.

5. The EAJA precludes an award of fees because there are special circumstances which make an award unjust.

6. The application for fees and other expenses is unreasonable and excessive.

Inasmuch as this Court holds that the Secretary's position[3] in this case was substantially justified within the meaning of the EAJA, the Court need not address any further issues raised by the parties. *Smith v. Schweiker,* No. 80–C–0258, Slip Op. at 2 (E.D.N.Y. Sept. 8, 1982).

## II.

### A.

The EAJA, adopted October 21, 1980, and effective October 1, 1981,[4] enacted as Title II, §§ 201–208, of the Small Business Export Expansion Act, Pub.L. 96–481, 94 Stat. 2325 (1980) and codified at 5 U.S.C. § 504, 28 U.S.C. § 2412 (Supp.1982),[5] allows attorney fee awards to certain parties prevailing in actions by or against the federal government. *Knights of the K.K.K.,* 679 F.2d at 65. This fee-shifting act represents yet another exception to the general "American Rule" that litigants pay their own attorney fees. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Photo Data, Inc.,* 533 F.Supp. at 350. The EAJA illustrates the express congressional provision necessary for an allowance of attorney fees against the United States. *Id.* 421 U.S. at 265–68, 95 S.Ct. at 1626–27; *National Ass'n for Advancement of Colored People v. Civiletti,* 197 U.S.App.D.C. 259, 609 F.2d 514, 516 (1979), *cert. denied,* 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1982).

---

3. "Neither the [EAJA] nor the legislative history provides a conclusive answer as to whether the 'position' for which substantial justification must be shown is the United States' litigation position or the United States' posture in its pretrial actions." *Knights of the K.K.K. v. East Baton Rouge,* 679 F.2d 64, 68 (5th Cir.1982). *See Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225, 228 (D.Md.1981); *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 352 (D.D.C.1982), appeal docketed, No. 82–1644 (D.C.Cir. June 9, 1982). Nonetheless, this Court agrees with other courts that "position" refers both to the government's position in prosecuting or defending the litigation and the government action upon which suit is based. *Nunes-Correia v. Haig,* 543 F.Supp. 812, 816 (D.D.C.1982); *Photo Data, Inc.,* 533 F.Supp. at 352 n. 7. *Contra Alspach,* 527 F.Supp. at 228. *See also Citizens' Coalition for Block Grant Compliance v. City of Euclid,* 537 F.Supp. 422 (N.D.Ohio 1982). In the instant case, the distinction is immaterial because the government was substantially justified in defending the Secretary's position and in its action upon which Plaintiff's suit is based. *See Operating Engi-*

*neers Local Union No. 3, etc. v. Bohn,* 541 F.Supp. 486, 495 (D.Utah 1982).

4. The "sunset provision" of the EAJA effects the repeal of 28 U.S.C. § 2412(d) on October 1, 1984. Act, October 21, 1980, Pub.L. 96–481, Title II, § 204(c), 94 Stat. 2329; 28 U.S.C. § 2412 note.

5. "The [EAJA] has been codified in two separate sections of the United States Code. Sections 201 and 202, the introductory sections, and section 203, dealing with fee awards in agency proceedings, are codified as part of the Administrative Procedure Act under Title 5. *See,* 5 U.S.C. § 504 [Supp.1982]. Section 204 of the [EAJA], dealing with fee awards in civil actions is codified as part of the Judicial Procedure Act, under Title 28. *See,* 28 U.S.C. § 2412 [Supp.1982]. Despite this dual codification, certain parts of the [EAJA], such as the effective date, cover the entire [EAJA]." *Berman v. Schweiker,* 531 F.Supp. 1149, 1151 n. 1 (N.D.Ill. 1982).

In the instant case the relevant statutory provision is 28 U.S.C. § 2412(d)(1)(A). That subsection provides in pertinent part:

> [A] court shall award to a prevailing party other than the United States fees and other expenses [6] ... *incurred by that party* in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A). (Emphasis added.)

There can be no serious question but that Plaintiff was the prevailing party in this action. The issue becomes whether the position of the United States was substantially justified. This Court holds that it was and Plaintiff's application is therefore denied.

### B.

Although the EAJA is of recent vintage, a number of courts have had occasion to define and apply the "substantial justification" standard.[7] The standard falls between the common law "bad faith" exception and an automatic award of attorney's fees to prevailing parties; it represents a "middle ground" between such automatic award of fees to a prevailing party and an award only where the government's position was arbitrary or frivolous. H.R. Rep. No. 96–1418, 96th Cong., 2d Sess. 19, *reprinted in* [1980] U.S.Code Cong. & Ad. News 4953, 4993 (House Report); *Berman,*

531 F.Supp. at 1154. Legislative history provides helpful instruction in identifying the parameters of the standard:

> The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its cause had a reasonable basis both in law and fact, no award will be made. In this regard, the strong deterrents to contesting Government action require that the burden of proof rest with the Government. . . .
>
> The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing. Furthermore, the Government should not be held liable where "special circumstances would make the award unjust." This "safety valve" helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts . . . .

House Report, *supra,* at 4989–90; *United States for Heydt,* 668 F.2d at 448–49. Furthermore, the burden is upon the government to demonstrate that it has met this "reasonableness" standard.[8] *Id.; S & H Riggers & Erectors, Inc.,* 672 F.2d at 430.

---

**6.** "[F]ees and other expenses" includes reasonable attorney fees. 28 U.S.C. § 2412(d)(2)(A).

**7.** *Knights of the K.K.K.,* 679 F.2d at 68; *United States for Heydt v. Citizens State Bank,* 668 F.2d 444, 447–48 (8th Cir.1982); *Photo Data, Inc.,* 533 F.Supp. at 351; *Berman,* 531 F.Supp. at 1154; *Alspach,* 527 F.Supp. at 228–29; *Donovan v. Dillingham,* 668 F.2d 1196, 1199 (11th Cir.1982); *S & H Riggers & Erectors, Inc. v. O.S.H.R.C.,* 672 F.2d 426, 429–30 (5th Cir. 1982); *Nunes-Correia,* 543 F.Supp. at 816–20; *Wolverton v. Schweiker,* 533 F.Supp. 420 424– 25 (D.Idaho 1982); *Smith,* Slip Op. at 3; *Allen v. United States,* 547 F.Supp. 357, 358 (N.D.Ill. 1982); *Nichols v. Schweiker,* No. C81–818R, Order at 2 (W.D.Wash.1982).

**8.** In *Wolverton v. Schweiker* the court concluded that the applicable standard requires something more than just reasonableness. 533 F.Supp. at 424. The court reasoned that because the Senate Committee on the Judiciary refused to adopt an amendment to S 265 which would have changed the language governing the award of fees from "substantially justified" to "reasonably justified," S.Rep. No. 96–253, 96th Cong., 1st Sess. 1 (1979), p. 8, the standard essentially looks to the reasonableness of the government action, but, nonetheless, is slightly above one based on reasonableness. *Id.*

■ In the case at bar Plaintiff was successful on his renewed motion for summary judgment and the government's position was held to be erroneous as a matter of law. Although this Court held that the Secretary's decision was not supported by substantial evidence, *Cornella v. Schweiker,* 545 F.Supp. 918, 932 (D.S.D.1982), such holding does not automatically "require a concurrent finding by this [C]ourt that the Secretary's position was not substantially justified. To hold otherwise would mean that EAJA fees were allowable in every case where the [C]ourt found an absence of substantial evidence, a result certainly not intended by Congress." *Wolverton,* 533 F.Supp. at 425.

■ Plaintiff argues that *Wolverton* requires a holding that the Secretary's position in the instant case was not substantially justified. This Court does not so read *Wolverton.* In that case, the court found, in reversing the Secretary, "not only that there was a lack of substantial evidence to support the Secretary's position, but rather that there was *no* evidence to support his position." *Id.* (Emphasis in original.) The court, however, was quick to point out in a subsequent footnote that "[f]rom the experience of this court it is a rare situation where the Secretary's decision is supported by no evidence whatsoever. For this reason it is anticipated that few cases will arise where the Secretary's position is not substantially justified." *Id.* n. 14.

Simply stated, the instant case is easily distinguishable from *Wolverton* on just such an evidentiary basis. There, the court found no basis in fact underlying the ALJ's hypothetical question. *Id.* at 425. Here, this Court neither found nor held that there was no basis in fact underlying the ALJ's hypothetical question. This Court did hold, however, that the Secretary failed to meet his burden to establish that there was work available in the national economy that Plaintiff could perform in his disabled condition. *Cornella,* 545 F.Supp. at 931. Further, this Court did hold that testimony of the vocational expert did not constitute substantial evidence that there was work available in the national economy that Plaintiff could perform. *Id.* at 932.

The court in *Wolverton* also stated that there was no evidence supporting the Secretary's finding that the claimant had a residual capacity to work. *Wolverton,* 533 F.Supp. at 425. In the extensive record of the instant case, there *is* evidence supporting the Secretary's position that Plaintiff had a residual capacity to work. Indeed, this Court specifically recognized that "the evidence showing Plaintiff's work activity is ... conflicting and may well lean on the side of showing Plaintiff's ability to work." *Cornella,* 545 F.Supp. at 932. Notwithstanding this evidence, however, this Court concluded that the work activity evidence was not substantial when compared with the record as a whole. *Id.*

Finally, a number of circuit courts of appeal, including the Eighth Circuit in *McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir.1982), have upheld the validity of the use and application of the Medical-Vocational Guidelines (M–V Guidelines) in social security disability cases. In its previous memorandum opinion, this Court painstakingly reviewed the facts of record and the Secretary's use and application of the M–V Guidelines. Although this Court held that it was error for the Secretary to apply the M–V Guidelines mechanically to find nondisability, *id.* at 931, the Court cannot now say that it was unreasonable for the Secretary to rely on the use and application of the M–V Guidelines. The Secretary found that Plaintiff's age, education, work experience and residual functional capacity to perform sedentary work fit the requirements of the M–V Guidelines. The Secretary based these findings in part on a lack of objective clinical findings showing physical damage to Plaintiff's back, which is supported by the record, and the aforementioned evidence concerning Plaintiff's work activity. In this Court's view, the Secretary applied the M–V Guidelines erroneously, but not unreasonably.

Accordingly, based upon the foregoing, as well as this Court's lengthy memorandum opinion previously filed in this case, the

Court holds that the government's position was substantially justified and Plaintiff's application for attorney fees is denied.

### III.

### A.

Alternatively, even if the Secretary's position had not been substantially justified in this case, this Court is persuaded by the rationale and reasoning in *Kinne v. Schweiker,* that Plaintiff, as the prevailing party, did not "incur" any attorney fees or other expenses within the meaning of the EAJA. No. 80–81, Slip Op. at 2 (D.V.T. June 30, 1982). In the instant case, as in *Kinne,* the government did not resist an award of fees on the ground that Plaintiff has "incurred" none; but, in the instant case, as in *Kinne,* the issue invites comment and is decisive. *Id.*

Plaintiff is represented in this action by Black Hills Legal Services, Inc. Plaintiff is not responsible nor under any obligation to compensate his counsel for their representation in this matter. Although the parties have not specifically briefed this point, the dispositive issue is whether Plaintiff "incurred" attorney fees and other expenses within the meaning of the EAJA. In an alternative holding, this Court holds that he did not and his application is therefore denied.

### B.

■ It is well-settled that the starting point for interpreting a statute is the language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Id.; Aaron v. Securities and Exchange Comm'n,* 446 U.S. 680, 700, 100 S.Ct. 1945, 1957, 64 L.Ed.2d 611 (1980); *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979).

■ The EAJA explicitly requires that the prevailing party in a civil action must "incur" attorney fees in order for that party to be eligible to receive an award of such fees. 28 U.S.C. § 2412(d)(1)(A). Because the EAJA does not define the word "incurred," the fundamental canon of statutory construction must be applied that unless otherwise defined, words will be interpreted as taking their plain, ordinary, contemporary, and common meaning. *Perrin,* 444 U.S. at 42, 100 S.Ct. at 314; *Photo Data, Inc.,* 533 F.Supp. at 350. According to the dictionary, the common, ordinary meaning of "incurred" is to "become liable or subject to" or to "bring down upon oneself (*incurred* large debts to educate his children) (fully deserving the penalty he *incurred* )." [9] There is no question but that Plaintiff was represented by Black Hills Legal Services, Inc., a public interest service group. There is also no question but that Plaintiff has not "become liable or subject to" this group because of their representation.

The court in *Wolverton v. Schweiker* recognized "incurred" to mean "liable for." 533 F.Supp. at 423. The *Wolverton* court, however, did not have occasion to address the meaning of "incurred" in the context of the issue presented in the instant case: "Whether Congress intended to allow an award of attorney fees only if the [P]laintiff would otherwise be liable for them. [ ]" *Kinne,* Slip Op. at 4.

If Congress intended "incurred" to have its ordinary meaning, an award of attorney fees is not authorized in this case. If Congress intended "incurred" to have a different meaning, an award of attorney fees is authorized. "Neither the House, nor Senate, nor House Conference Reports define the term or indicate whether Congress contemplated fee awards to parties represented by public interest lawyers." *Id.* This Court agrees with the *Kinne* court and finds no congressional intent that gives "incurred" anything other than its ordinary meaning.

Section 202 of the EAJA, set out as a note to 5 U.S.C. § 504 describes congressional findings and purposes:

**9.** Webster's Third New International Diction-

ary, p. 1146 (1971).

(a) The Congress finds that certain individuals, partnerships, corporations, and labor and other organizations may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions and in administrative proceedings.

(b) The Congress further finds that because of the greater resources and expertise of the United States the standard for an award of fees against the United States should be different from the standard governing an award against a private litigant, in certain situations.

(c) It is the purpose of this title—

(1) to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States; and

(2) to insure the applicability in actions by or against the United States of the common law and statutory exceptions to the "American rule" respecting the award of attorney fees.

To effectuate these purposes, the EAJA created an exception to the "American Rule" to "insure the vindication of rights of parties who might otherwise be precluded from the adjudicatory process due to the prohibitive costs of seeking justice." *Photo Data, Inc.* 533 F.Supp. at 352 n. 6. In other words, the EAJA rests on the premise that economic deterrents to contesting unreasonable government action are removed by allowing certain prevailing parties to recover an award of attorney fees. *Wolverton,* 533 F.Supp. at 422; *Kinne,* Slip Op. at 5; *Photo Data, Inc.,* 533 F.Supp. at 351.

In the case at bar Plaintiff was not deterred from seeking review of unreasonable governmental action because of the expense involved in securing the vindication of his rights; the economic deterrents to contesting governmental action were not magnified in this case by the disparity between the resources and expertise of Plaintiff and his government. House Report, *supra,* at 4984. The purpose of the EAJA, to reduce the deterrents and disparity by awarding attorneys fees, would not be furthered in this case by such an award. *Id.* Indeed, Plaintiff was not deterred in the slightest as shown by the presence of his case before this Court on no less than two occasions. Plaintiff simply was not precluded from resorting to the adjudicatory process; he was not made to endure any injustice, rather he successfully contested it. *Id.* at 4988. In Plaintiff's case, therefore, the legislative history of the EAJA, as an indicator of congressional intent, militates heavily against an award of attorney fees.

C.

This Court is fully aware of fee-shifting statutes other than the EAJA where plaintiffs represented by public interest groups are allowed to recover reasonable attorney fees. In *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the Supreme Court summarily rejected the argument that representation by a public interest group under 42 U.S.C. § 2000e–5(k) is a "special circumstance" that should result in denial of counsel fees. *See also, Equal Employment Opportunity Commission v. Enterprise Association Steamfitters Local No. 638,* 542 F.2d 579 (2nd Cir.1976), *cert. denied,* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977) (award under 42 U.S.C. § 2000e–5(k)). The Second Circuit Court of Appeals in *Mid-Hudson Legal Service, Inc. v. G & U, Inc.,* 578 F.2d 34 (2nd Cir.1978), allowed an award of attorneys fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.[10] Notwithstanding this

---

**10.** *See also, Rodriguez v. Taylor,* 569 F.2d 1231, 1244–45 (3rd Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978) (publicly funded legal services organization not absolutely barred from receiving mandatory

ADEA, 29 U.S.C. § 216(b), attorneys' fee awards); *Card v. Dempsey,* 445 F.Supp. 942, 944–5 (E.D.Mich.1978) (federally funded legal services organization awarded attorney fees under the Civil Rights Attorney's Fees Awards

precedent, however, the EAJA as a fee-shifting statute is readily distinguishable in light of the doctrine that fee-shifting statutes should not be expansively interpreted. *See, Alyeska Pipeline Service Co.,* 421 U.S. at 269, 95 S.Ct. at 1627; *Russo v. State of New York,* 672 F.2d 1014, 1023 (2nd Cir. 1982); *Cunningham v. FBI,* 664 F.2d 383, 384–88 (3rd Cir.1981).

First, as previously discussed, the EAJA requires on its face that attorney fees must be "incurred" by the prevailing party. In contrast, other typical fee-shifting statutes such as 42 U.S.C. § 1988 simply provide: "In any action or proceeding to enforce [certain] provision[s] . . . , the court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorney's fee as part of the costs." [11] 42 U.S.C. § 1988. Such a provision does not require that the prevailing party must incur attorney fees before they can be awarded; "[it] does not on its face bar awards to plaintiffs who are not obligated to compensate their attorneys," as does the EAJA. *Kinne,* Slip Op. at 6. The United States Supreme Court recognizes that statutory allowances of attorneys's fees are available in a variety of circumstances and differ considerably among themselves. *Alyeska,* 421 U.S. at 260–61, 95 S.Ct. at 1623. The EAJA demonstrates just such a difference on its face which precludes an award of attorneys' fees in the instant case. Furthermore, these types of fee-shifting statutes, as shown in the civil rights area, appear in the context where Congress made awards an integral part of the remedy. S.Rep. No. 1011, 94th Cong., 2nd Sess. 5, *reprinted in,* [1976] U.S.Code Cong. & Ad. News 5908, 5913.

> Awarding attorney fees to plaintiffs who are under no obligation to compensate their attorneys is appropriate in the civil rights context because it encourages people to seek judicial redress of unlawful discrimination and recompenses those who serve the public interest by helping to protect the civil rights of others. The EAJA's goal is more modest than those underlying the numerous fee-shifting provisions in the civil rights statutes; rather than making fee-shifting a part of the remedy, the EAJA employs fee-shifting as a device to increase the accessibility of other, pre-existing remedies. *Kinne,* Slip Op. at 6–7.

The above-principle applies equally as well to other aforementioned fee-shifting statutes that allow an award of attorneys' fees to public interest groups, because those statutes, like the civil rights statutes, "usually . . . effectuate a specific and compelling public interest." House Report, *supra,* at 4987.

Second, the primary purpose of the EAJA—to supplant the economic deterrence to curbing unreasonable government action [12]—further distinguishes the EAJA from other statutory exceptions to the American Rule by reference to the EAJA's all important congressional underpinnings. The legislative history of the EAJA reveals a redefinition and reformulation of public policy in an area where fee-shifting focuses primarily on plaintiffs for whom cost may be a deterrent to vindicating their rights:

> Providing an award of fees to a prevailing party, represents one way to improve citizen access to courts and administrative proceedings. When there is an opportunity to recover costs, a party does not have to choose between acquiescing to an unreasonable Government order or prevailing to his financial detriment. Thus, by allowing an award of reasonable fees and expenses against the Government when its action is not substantially justified, S. 265 provides individuals an

Act of 1976, 42 U.S.C. § 1988); *Oldham v. Ehrlich,* 617 F.2d 163, 168 (8th Cir.1980) (inappropriate under 42 U.S.C. § 1988 to consider that prevailing plaintiff's attorney was working for legal aid organization.

**11.** For an extensive listing of specific and explicit provisions for the allowance of attorneys'

fees under selected statutes granting or protecting various federal rights, *see Alyeska Pipeline Service Co.,* 421 U.S. at n. 33, 95 S.Ct. at n. 33.

**12.** 5 U.S.C. § 504 note; *Photo Data, Inc.,* 533 F.Supp. at 352.

effective legal or administrative remedy where none now exists. By allowing a decision to contest Government action to be based on the merits of the case rather than the cost of litigating, S. 265 helps assure that administrative decisions reflect informed deliberation. In so doing, fee-shifting becomes an instrument for curbing excessive regulation and the unreasonable exercise of Government authority.

*Id.* at 4991. Based in part upon this showing of congressional intent, Plaintiff was not one of the individuals for whom cost was a deterrent to vindicating his rights.

Finally, to qualify for attorney fees under the EAJA, a party must meet certain financial eligibility requirements set forth in section 2412(d)(2)(B).[13] 28 U.S.C. § 2412(d)(2)(B); *Knights of the K.K.K.*, 679 F.2d at 68; *Alspach* 527 F.Supp. at 228. Congress therefore not only recognized but explicitly provided that certain individuals would not be eligible for an award of attorneys' fees under the EAJA. This congressional recognition and provision is consistent with the purpose of the EAJA; presumably, there is no economic deterrence where a party's wealth is such that he has the ability to pay. The EAJA therefore does not apply where its purpose is not furthered.

Similarly, in the instant case, because Plaintiff was represented by Black Hills Legal Services, Inc., he was not economically deterred from vindicating his rights. The purpose of the EAJA would not be furthered by awarding attorneys' fees to Plaintiff. Accordingly, Plaintiff is not entitled to an award of attorneys' fees under the EAJA, and his application for costs and attorney fees is therefore denied. *Kinne,* Slip Op. at 8.

---

**13.** To be eligible to receive an award of fees under the EAJA, an individual's net worth must not exceed $1,000,000 at the time the civil action was filed, or certain business' net worth must not exceed $5,000,000. 28 U.S.C. § 2412(d)(2)(B); *see also* 5 U.S.C. § 504(b)(1)(B).