Wallis D. CORNELLA, Appellant,

v.

Richard SCHWEIKER, Secretary, Health & Human Services, Appellee.

No. 83–1209.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1983.

Decided Feb. 21, 1984.

Phillip N. Hogen, U.S. Atty., Sioux Falls, S.D., J. Paul McGrath, Asst. Atty. Gen., William Kanter, Sara B. Greenberg, Attys., Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for appellee.

Black Hills Legal Services, Inc. by Mark Falk, Rapid City, S.D., for appellant.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

HENLEY, Senior Circuit Judge.

Wallis D. Cornella appeals from the district court's denial of his application for attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412; 5 U.S.C. § 504 (Supp.1982). The district court denied the application because (1) the Social Security Administration was "substantially justified" in denying Cornella disability benefits and, in the alternative, (2) Cornella did not "incur" any attorneys' fees within the meaning of the EAJA since he was represented by a *pro bono* organization. We reverse the judgment of the district court.

Cornella initially applied for disability benefits on November 11, 1977 due to severe problems with his back and hearing. After a hearing held in November of 1978, the Administrative Law Judge (ALJ # 1) denied Cornella's claim. After the Appeals Council upheld this ruling, Cornella sought review in federal district court.

The district court remanded for further development of the record. A second hearing was held before a different Administrative Law Judge (ALJ # 2) on October 9, 1980. On March 27, 1981 ALJ # 2 recommended a partial denial of Cornella's claim. The Appeals Council modified this decision but nonetheless still partially denied Cornella's claim for disability benefits. Cornella again sought review in the district court. The court, in a lengthy memorandum opinion, *see Cornella v. Schweiker,* 545 F.Supp. 918 (D.S.D.1982), reversed and ordered the Secretary to pay full benefits to Cornella. Subsequently Cornella requested attorneys' fees pursuant to the EAJA. As stated, the district court denied the request. *See Cornella v. Schweiker,* 553 F.Supp. 240 (D.S.D. 1982).

## I. BACKGROUND

In order to view the parties' contentions in proper perspective, we will summarize

the extensive factual record.[1] Cornella was born on February 19, 1929 and has an eleventh grade education. He has been primarily employed as a truck driver and heavy equipment operator throughout his life. Cornella has a long history of medical problems. When he was a teenager he fell out of a moving car and broke his back. Cornella broke his back again in 1956 when a tree fell on him while he was operating a bulldozer. In 1972 he reinjured his back while unloading a truck. As a result of severe muscle spasms in his lower back, he was hospitalized and underwent surgery.[2] From 1972 to 1975 Cornella was unable to work and received workmen's compensation benefits. Despite increasing difficulty from physical limitations and accompanying pain, Cornella did engage in his truck driving job from 1975 until August 13, 1977. On that date he experienced severe muscle spasms in his lower back while attempting to chain down a truckload of logs. Cornella did not work from August 13, 1977 to March, 1978. Between March and September of 1978, Cornella did attempt some truck driving activity, although it appears this activity was sporadic.[3] After September of 1978 Cornella's work activity was negligible.

Cornella's first administrative hearing was held on November 28, 1978 and he was not represented by counsel. Cornella testified that he could lift nothing, including tarps and chains on trucks. Constant back pain interfered with his sleeping and his normal activities. Even walking was painful. Cornella stated that he suffered from chronic headaches, increasing in severity since 1972. He further testified that he wore a back brace constantly, even when he was asleep, and took two-hour naps during the day. He attended his first hearing on crutches and was using a cervical traction kit to stretch his neck muscles. At the time of the first hearing Cornella was taking many different kinds of prescribed medications including Valium, Darvon, Motrin, Ascriptin, Napersin, and Tylenol #.3 (with Codeine). Cornella was treated at the Fort Meade Veterans Administration Hospital, both inpatient and outpatient, from March of 1977 through the date of his first hearing. He was a hospital patient from November 5, 1977 to December 5, 1977.

ALJ # 1 found that Cornella's complaints of pain were not credible, that Cornella had the residual functional capacity to engage in "light" truck driving activity and therefore found he could return to his former work. ALJ # 1 thus ruled Cornella was not disabled.[4] The Appeals Council affirmed and Cornella sought judicial review. The district court remanded for further development of the record, indicating

---

1. For a more detailed recitation of the record in this case, *see Cornella v. Schweiker,* 545 F.Supp. 918 (D.S.D.1982) (district court opinion awarding disability benefits).

2. Cornella underwent a decompressive laminectomy, but due to his low blood pressure at the time no lumbar fusion was performed.

3. Cornella also engaged in some volunteer activities. He did minor electrical repairs for friends and family on approximately four occasions over a three-year period. He also helped friends and family with a small amount of plumbing work. He helped his mother on occasion by driving for the senior citizens' meals-on-wheels program when the roads were too icy for his eighty-one year old mother to drive.

4. In *McCoy v. Schweiker,* 683 F.2d 1138, 1141–42 (8th Cir.1982), we summarized the sequence of decision-making that ALJs are required to follow in analyzing disability claims:

First, a determination is made whether a disability claimant is currently engaged in substantial gainful activity; if so, he must be found not disabled. If the claimant is not engaged in substantial gainful activity, the next question is whether he is suffering from a severe impairment, defined as one that significantly limits the ability to perform basic work-related functions. If a severe impairment is not found, the claimant must be found not disabled. If there is a severe impairment, and it is one listed in Appendix 1 to Subpart P, the claimant is found disabled on the medical evidence alone. If the impairment is not listed in Appendix 1, the next inquiry is whether the claimant can perform relevant past work. If he can, a finding of no disability is required. Finally, if the claimant cannot perform relevant past work, the question then becomes whether he can nevertheless do other jobs that exist in the national economy. . . .

the apparent lack of support in the record for ALJ # 1's findings.

In accordance with the remand order, a second administrative hearing was held on October 9, 1980, at which Cornella was represented by counsel. In addition to attempting to clarify his work activity from March to September of 1978, Cornella again emphasized his constant low back pain. He could stand only thirty minutes before having to get off his feet. He could no longer walk more than a couple of blocks. He stated he does not even try to bend over, that it bothers him to sit for very long, and that he cannot sleep well. He testified that both of his legs were numb and asleep at the hearing. Cornella's complaints of disabling pain were corroborated by testimony and depositions from his wife, daughters, mother, brother, a neighbor and his local minister.

In addition to the testimony given at the two administrative hearings, extensive medical evidence was submitted. In fact, it appears Cornella underwent numerous medical and psychiatric examinations by at least seven doctors. No attempt to detail this evidence will be made here. We observe only that we agree with the district court that the medical evidence as a whole supports Cornella's complaints of severe pain.[5] *Cornella*, 545 F.Supp. at 932.

ALJ # 2 ruled that Cornella was disabled but that his disability onset date was June 30, 1979. Cornella objected to this date contending that he has been disabled since August 13, 1977. The Appeals Council modified ALJ # 2's decision by setting his disability onset date at February 19, 1979. This date was arrived at by the Appeals Council through its application of the Medical-Vocational (M–V) Guidelines in Appen-

dix 2 of the Secretary's Regulations. 20 C.F.R. §§ 404.1501 *et seq.* Cornella again sought judicial review in district court. The court held that the Secretary's decision partially denying Cornella's claim was not supported by substantial evidence and that the Secretary's application of the M–V Guidelines was erroneous since the Guidelines are not to be mechanically applied to a claimant, such as Cornella, who suffers from non-exertional impairments. The court thus reversed and ordered the Secretary to pay Cornella full benefits. Only the subsequent denial of Cornella's application for attorneys' fees is at issue here.

## II.  ANALYSIS

■ Under federal law, attorneys' fees may be awarded against the United States only if such an award is specifically provided by statute. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The EAJA, effective October 1, 1981, represents another exception to the "American Rule" that litigants pay their own attorneys' fees. *See, e.g., Spencer v. N.L.R.B.*, 712 F.2d 539, 545 (D.C.Cir.1983); *Natural Resources Defense Council v. U.S.E.P.A.*, 703 F.2d 700, 704 (3d Cir.1983). Its primary purpose "is to diminish the deterrent effect of the expense involved in seeking review of, or defending against, unreasonable government action." *Foley Const. Co. v. U.S. Army Corps of Engineers*, 716 F.2d 1202, 1203 (8th Cir.1983) (citing H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4984).

■ Under the EAJA a prevailing party may obtain attorneys' fees only where the position of the United States was not "substantially justified."[6] The test of whether

---

5. For example, Cornella's attending and treating physician, Dr. Stephen Maks, examined Cornella many times over the last six years and concluded in reports dated December 16, 1977 and June, 1978 that Cornella was unemployable because of low back distress and orthopedic problems.

6. 28 U.S.C. § 2412(d)(1)(A) (Supp.1982) provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was

the position of the government is substantially justified is essentially one of reasonableness in law and in fact and the United States has the burden of showing the substantial justification of its position. H.R. Rep. No. 1418, 96th Cong., 2d Sess. 10–11, reprinted in 1980 U.S.Code Cong. & Ad. News 4989; *Foley,* 716 F.2d at 1204; *Dougherty v. Lehman,* 711 F.2d 555, 563 (3d Cir.1983); *Gava v. United States,* 699 F.2d 1367, 1370 (Fed.Cir.1983). This standard represents a middle ground between an automatic award of fees and an award only where the government's position was frivolous. H.R.Rep., *supra,* at 14, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4993. Where the government forces a party into "lengthy administrative proceedings before final vindication of his or her rights . . . the government should have to make a strong showing . . . that its action was reasonable." *Id.* at 18, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4997; *Natural Resources Defense Council,* 703 F.2d at 712; *Tyler Business Services, Inc. v. N.L.R.B.,* 695 F.2d 73, 75 (4th Cir.1982). The fact that the government lost the case, however, does not raise a presumption that its position was

not substantially justified.[7] H.R.Rep., *supra,* at 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4990.

There has been much discussion in the opinions construing the EAJA about which government position must be substantially justified, the government's litigation position or the agency action which made it necessary for a party to file suit.[8] The legislative history of the EAJA is inconclusive on which position is to be examined. *Spencer,* 712 F.2d at 549. We have reviewed the opinions on the subject and find that there are persuasive arguments supporting both the "underlying action" and the "litigation position" theories. *See id.* at 546. In *Spencer* the District of Columbia Circuit examined this precise question extensively and reasoned that the issue is academic in most circumstances. *Id.* at 551–52. Even though we examined the government's litigation position in *Foley* since that was the way the parties framed the issue on appeal, we recognized that "[i]n most cases 'it makes no functional difference how one conceives of the government's "position"'" because 'the litigation position

---

7. The legislative history of the EAJA provides:

The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made. . . .

Certain types of case dispositions may indicate that the Government action was not substantially justified. A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict or where a prior suit on the same claim had been dismissed. Such cases clearly raise the possibility that the Government was unreasonable in pursuing the litigation.

The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.

H.R.Rep., *supra,* at 10–11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4989.

substantially justified or that special circumstances make an award unjust.

8. *Natural Resources Defense Council,* 703 F.2d at 707 (examines both positions); *Gava,* 699 F.2d at 1371 (examines litigation position); *Tyler,* 695 F.2d at 75 (examines litigation position); *Broad Ave. Laundry & Tailoring v. United States,* 693 F.2d 1387, 1390 (Fed.Cir.1982) (examines litigation position); *Watkins v. Harris,* 566 F.Supp. 493, 498 (E.D.Penn.1983) (examines both positions); *Gross v. Schweiker,* 563 F.Supp. 260, 262 (N.D.Ind.1983) (examines both positions); *Environmental Defense Fund, Inc. v. Watt,* 554 F.Supp. 36, 40–41 (E.D.N.Y. 1982) (examines both positions); *MacDonald v. Schweiker,* 553 F.Supp. 536, 540 (E.D.N.Y. 1982) (examines both positions); *Moholland v. Schweiker,* 546 F.Supp. 383, 386 (D.N.H.1982) (examines agency position); *Nunes-Correia v. Haig,* 543 F.Supp. 812, 816 (D.D.C.1982) (examines both positions); *Operating Engineers Local U. v. Bohn,* 541 F.Supp. 486, 494–95 (D.Utah 1982) (examines litigation position); *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 352 (D.D.C.1982) (examines both positions); *Alspach v. Dist. Director of Internal Rev.,* 527 F.Supp. 225, 228 (D.Maryland 1981) (examines litigation position). The district court examined both positions. *Cornella,* 553 F.Supp. at 242 n. 3.

of the United States will almost always be that its underlying action was legally justifiable.' " *Foley,* 716 F.2d at 1204 (citing *Spencer,* 712 F.2d at 551–52); *see also Hoang Ha v. Schweiker,* 707 F.2d 1104, 1106 (9th Cir.1983); *Environmental Defense Fund, Inc.,* 554 F.Supp. at 40–41.

We believe that such is the situation here. The government's litigation position is that the underlying agency position is legally justifiable, *i.e.,* the Secretary's decisions denying Cornella disability benefits were correct. Therefore we must examine the evidence and law surrounding the Secretary's decisions to deny Cornella disability benefits in order to decide whether the government's defense of that denial was substantially justified.

## SUBSTANTIAL JUSTIFICATION

Since Cornella is a prevailing party under the Act, the government has the burden to show that its cause had a reasonable basis both in law and fact. *Foley,* 716 F.2d at 1204. The government contends its position was substantially justified in fact by pointing to the evidence showing Cornella had a residual functional capacity (RFC) to work. The government apparently alleges that this provides substantial justification for ALJ # 1's initial denial of disability benefits and ALJ # 2's partial denial of benefits, as well as for the government's defense of those denials at the district court level. The district court stated that "the evidence showing Plaintiff's work activity is . . . conflicting and may well lean on the side of showing Plaintiff's ability to work." *Cornella,* 553 F.Supp. at 244 (quoting its previous opinion on disability).[9]

The only evidence supporting Cornella's RFC to work stems from Cornella's work activity from March to September of 1978. There is no dispute that Cornella did not engage in any work activity of consequence at any other time after August 13, 1977. Upon close examination of the record as a whole, we do not believe that this evidence satisfies the government's burden of showing its position was reasonable in fact. The record does show Cornella averaged approximately fifteen to eighteen hours of work a week in August and September of 1978, and that from March to December of 1978 he put in a total of about six hundred hours of work. However, this activity provides little, if any, support for ALJ # 1's denial of benefits. Work activity is considered substantial gainful activity if a claimant has spent time "comparable to time customarily spent by individuals without impairment in similar work activities as a regular means of livelihood." 20 C.F.R. § 404.1533. Even a person working only half time would have put in approximately seven hundred sixty hours (38 weeks $\times$ 20 hours). Moreover, this sporadic work activity does not support ALJ # 1's finding that Cornella had the RFC to return to his former work. There was no evidence or discussion in the record as to the criteria of light or sedentary work, nor was there any discussion of how Cornella fit those criteria. Apparently, ALJ # 1 simply presumed Cornella could return to his former work because of his work activity between March and September of 1978. This was not a reasonable presumption. "Adequate proof [of RFC to do sedentary work] cannot be based on mere theoretical ability to perform some kind of work."

9. The district court relied on this evidence in finding the Secretary's position to be substantially justified in fact. The court was led to this conclusion by distinguishing the instant case from *Wolverton v. Schweiker,* 533 F.Supp. 420 (D.Idaho 1982). In *Wolverton,* the court found that there was *no* evidence to support the Secretary's position. *Id.* at 425. The district court, in denying attorneys' fees here, stated that since there is some evidence supporting the Secretary's position, the government's position was substantially justified. The court cited dicta from *Wolverton* that "it is a rare situation where the Secretary's decision is sup-

ported by no evidence whatsoever. For this reason, it is anticipated that few cases will arise where the Secretary's position is not substantially justified." *Cornella,* 553 F.Supp. at 244 (quoting *Wolverton, supra,* at 425 n. 14).

To the extent that the district court's opinion and the court's opinion in *Wolverton* can be read as stating that the substantial justification standard is met whenever the government shows its position was based on *some* evidence as opposed to *no* evidence, their reasoning is unacceptable. Clearly a "no evidence" standard is not what Congress intended in enacting the EAJA.

*Cole v. Harris,* 641 F.2d 613, 614 (8th Cir. 1981); *Simonson v. Schweiker,* 699 F.2d 426, 428 (8th Cir.1983). In spite of all the other evidence of disability, including, inter alia, the medical evidence, Cornella's uncontradicted complaints of disabling pain, and the lack of any other evidence of work activity in any other time period, ALJ # 1 found Cornella not disabled and the government attempted to uphold this denial on review. We do not believe the government's position can be deemed reasonable in fact when it relied on an isolated part of the evidence and ignored the other overwhelming evidence of disability. *See Kauffman v. Schweiker,* 559 F.Supp. 372, 376 (M.D.Penn. 1983) (unreasonable to focus on a single element of government's case where all other evidence showed claimant to be disabled); *Hornal v. Schweiker,* 551 F.Supp. 612, 618 (M.D.Tenn.1982).

Similar reasoning also applies to the Secretary's partial denial of disability benefits following the district court's remand order and the government's defense of that denial. His unsuccessful work attempt between March and September of 1978 was not a reasonable basis in fact for ALJ # 2's finding that Cornella had engaged in substantial gainful activity.[10] Nor was it a reasonable basis for the Secretary's conclusion that, prior to February 19, 1979, Cornella had the ability to engage in substantial gainful activity of a sedentary nature. Apart from that work attempt, there was no evidence which contradicted Cornella's subjective complaints of disabling pain. His complaints of pain and description of his physical activities indicated a continuing disability from August of 1977 through February of 1979. He had difficulty sleeping, he had headaches and sharp shooting pains in his arms as well as in his lower back, he used crutches, he had to rest during the day, he could not lift much, and it

hurt him to walk, stand, bend, sit and do virtually anything. The medical reports of both the treating and consulting physicians corroborated the existence of disabling pain. In addition, many witnesses at the second hearing corroborated Cornella's physical impairments. ALJ # 2 determined, however, that these opinions were not based on personal knowledge. There is no reasonable basis for this determination since each witness specifically indicated personal knowledge and there was no evidence that the testimony was based on anything other than the witnesses' own observations.

■ In short, there was no reasonable basis for determining that Cornella malingered between August of 1977 and his fiftieth birthday, February 19, 1979. Cornella's claim of disability was more than adequately established. Yet the Secretary has continually attempted to justify the government's actions by focusing on a single element, his failed work attempt, when all the rest of the evidence pointed to a finding of disability. We do not believe the government has met its burden of showing substantial justification in fact.

The government must also show that its position was substantially justified in law. The government attempts to meet its burden by stating that its use and application of the M–V Guidelines was reasonable.

The Secretary found that Plaintiff's age, education, work experience and residual functional capacity to perform sedentary work fit the requirements of the M–V Guidelines. The Secretary based these findings in part on a lack of objective clinical findings showing physical damage to Plaintiff's back ... and the aforementioned evidence concerning Plaintiff's work activity.

*Cornella,* 553 F.Supp. at 244.

■ It has been clearly established that the M–V Guidelines are not controlling and

10. ALJ # 1 apparently did not consider the work activity substantial gainful activity since he went past step 1 of the sequential analysis and moved on to inquire whether Cornella had a severe impairment and whether he could perform past relevant work. See note 4, *supra,* and accompanying text. Even the Appeals Council apparently recognized that Cornella

had not engaged in substantial gainful activity since the Council utilized the M–V Guidelines following ALJ # 2's decision. "By using the Guidelines, the Council effectively found that plaintiff was *not* engaged in substantial gainful activity in order to reach the stage ... where age, education, work experience and RFC become relevant." *Cornella,* 545 F.Supp. at 927.

cannot be mechanically applied where there is evidence of non-exertional impairments. *McDonald v. Schweiker,* 698 F.2d 361, 364 (8th Cir.1983); *McCoy v. Schweiker,* 683 F.2d 1138, 1146–49 (8th Cir.1982). Cornella's subjective complaints of pain clearly established the existence of a non-exertional impairment. *McCoy,* 683 F.2d at 1146–49. The Secretary [11] argues that she did not have the benefit of *McCoy* at the time of the application of the Guidelines to Cornella. The Secretary's own regulations, however, provide that the M–V Guidelines are not controlling where a claimant suffers from non-exertional impairments. 20 C.F.R.App. 2 § 200.00(e)(1) and (2). It was not reasonable for the Secretary to ignore her own regulations. In addition, as the district court noted, the Secretary applied the Guidelines based on Cornella's work activity and the lack of objective medical evidence showing the cause of Cornella's low back pain. We have already indicated that it was unreasonable for the Secretary to rely on the isolated evidence of Cornella's work activity. With regard to the lack of objective medical evidence, we have held many times and as early as 1978 that there is no requirement that a claimant provide direct medical evidence of the cause or existence of subjective pain. *See, e.g., Cole v. Harris,* 641 F.2d 613, 615–16 (8th Cir.1981); *Brand v. Secretary of HEW,* 623 F.2d 523, 525 (8th Cir.1980); *Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir.1978). In any event, we have already stated that the medical evidence as a whole supported Cornella's complaints of pain. Thus, we conclude that the Secretary's application of the M–V Guidelines to Cornella was unreasonable.

The government also relied on the testimony of a vocational expert called to testify at the second hearing. But the question asked of the expert was framed in a way which assumed Cornella had the residual functional capacity to engage in sedentary work and did not include reference to his non-exertional impairments. This was error. We have consistently held that hypothetical questions that assume away disabilities and physical limitations are not proper.[12] *See, e.g., Stone v. Harris,* 657 F.2d 210, 211 (8th Cir.1981); *Martin v. Harris,* 666 F.2d 1153, 1155 (8th Cir.1981); *Daniels v. Mathews,* 567 F.2d 845, 848 (8th Cir.1977).

■ In sum, we hold that the government has failed to meet its burden of showing its position was substantially justified in law. Due to lengthy delays and continual adverse administrative decisions, it took Cornella approximately three and one-half years from the time he first sought judicial review to the date he finally received a favorable decision. Congress indicated that the government must make a "strong showing" where a claimant is forced into lengthy administrative proceedings. H.R.Rep., *supra,* at 18, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4997. The government has not made a strong showing here. Since the government has failed to show a reasonable basis in fact and law for its position, and since there are no "special circumstances" that would make an award of attorneys' fees unjust, we conclude that an award of attorneys' fees under the EAJA is required.

## ATTORNEYS' FEES AWARDS TO LEGAL SERVICES ORGANIZATIONS

■ The district court held that, alternatively, even if the Secretary's position was

---

11. The current Secretary of Health and Human Services is Margaret M. Heckler.

12. There were other mistakes of law as well. For example, ALJ # 1 failed in his duty to fully develop the record at the first hearing, *see Landess v. Weinberger,* 490 F.2d 1187, 1189 (8th Cir.1974), as exemplified by the district court's remand for further development of the record. Instead of voluntarily remanding the case for further development of the record, the Appeals Council affirmed and the government attempted to uphold ALJ # 1's denial of bene-fits, thus forcing Cornella into court the first time. ALJ # 1 also erred as a matter of law when he took administrative notice that sedentary and light jobs existed in the national economy instead of obtaining the testimony of a vocational expert. *See, e.g., Johnson v. Richardson,* 486 F.2d 1023, 1025 (8th Cir.1973). This failure to obtain a vocational expert should have put the Secretary on notice that the record was inadequately developed. The Secretary, however, opposed a remand and sought affirmance of ALJ # 1's decision.

not substantially justified, Cornella did not "incur" any attorneys' fees within the meaning of the EAJA since he was represented by a *pro bono* legal organization, Black Hills Legal Services. The court, relying heavily on *Kinne v. Schweiker,* No. 80–81, slip op. (D.Vt. June 30, 1982) (*Kinne II*), reasoned that since Cornella was represented by *pro bono* counsel, "he was not economically deterred from vindicating his rights." *Cornella,* 553 F.Supp. at 248.[13] The district court therefore held that the purpose of the EAJA, which is to remove the deterrent effect of the expense involved in contesting unreasonable government action, would not be furthered by an award of attorneys' fees to *pro bono* counsel.

Although the district court's rationale has some logical appeal, we believe that Congress did not intend such a result for several reasons. First, the legislative history of the EAJA lends support to the conclusion that *pro bono* awards were contemplated:

> In general, consistent with the above limitations, the computation of attorney fees should be based on prevailing market rates *without reference to the fee arrangements between the attorney and client.* The fact that attorneys may be providing services at salaries or hourly rates below the standard commercial rates which attorneys might normally receive for services rendered is not relevant to the computation of compensation under the Act. In short, the award of fees is to be determined according to general professional standards.

H.R.Rep., *supra,* at 15, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4994 (emphasis added). Once the actual fee arrangements between the attorney and client are excluded from computation of the award, there is no logical distinction which can be drawn between cases in which fees have been incurred and those in which they have not. *Kinne v. Schweiker,* No. 80–81, slip op. at 5 (D.Vt. Dec. 29, 1982) (*Kinne III*).

Thus, if an attorney charged a client forty dollars per hour, the EAJA would permit payment of a fee calculated at seventy-five dollars per hour [if that was the prevailing market rate], even though the client never legally "incurred" liability for the additional thirty-five dollars per hour. The Court can discern no reason why this logic is not compelling, whether an attorney charges forty dollars per hour, ten dollars per hour or represents the plaintiff on a *pro bono* basis.

*Hornal v. Schweiker,* 551 F.Supp. at 616. We agree with this reasoning.

Moreover, we note that awards of attorneys' fees to legal services organizations have been upheld under fee shifting statutes similar to the EAJA. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 70 n. 9, 100 S.Ct. 2024, 2034 n. 9, 64 L.Ed.2d 723 (1980) (*pro bono* awards available under 42 U.S.C. § 2000e–5(k)); *McLean v. Arkansas Board of Education,* 723 F.2d 45 at 47 (8th Cir.1983); *Oldham v. Ehrlich,* 617 F.2d 163, 168 (8th Cir.1980) (*pro bono* awards available under 42 U.S.C. § 1988); *Crooker v. U. S. Dep't of Treasury,* 634 F.2d 48, 49 n. 1 (2d Cir.1980) (*pro bono* awards available under Freedom of Information Act); *Rodriquez v. Taylor,* 569 F.2d 1231, 1244–46 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978) (*pro bono* awards available under Age Discrimination in Employment Act).

Thirdly, allowing fee awards to *pro bono* counsel under the EAJA "serves to insure that legal services groups, and other *pro bono* counsel, have a strong incentive to represent indigent social security claimants." *Ceglia v. Schweiker,* 566 F.Supp. 118, 123 (E.D.N.Y.1983). If attorneys' fees to *pro bono* organizations are not allowed in litigation against the federal government, it would more than likely discourage involvement by these organizations in such cases, effectively reducing access to the judiciary

---

13. Two weeks after the district court issued its opinion in the instant case, the Vermont court reversed itself and held attorneys' fees could be awarded to *pro bono* counsel under the EAJA.

*Kinne v. Schweiker,* No. 80–81, slip op. (D.Vt. Dec. 29, 1982) (*Kinne III*). The *Kinne* court recognized that its "initial analysis was too narrow in its focus." *Id.* at 2.

for indigent individuals. Such a result surely does not further the goals of the EAJA. *See id.*

Finally, although our research has disclosed no circuit court rulings on the issue, the district courts have allowed *pro bono* awards under the EAJA with virtual unanimity. *See, e.g., Kinne III, supra; Ceglia,* 566 F.Supp. at 122–23; *Jones v. Schweiker,* 565 F.Supp. 52, 54–55 (W.D.Mich.1983); *San Filippo v. Secretary of Health & Human Serv.,* 564 F.Supp. 173, 176 (E.D.N.Y.1983); *Chee v. Schweiker,* 563 F.Supp. 1362, 1364 (D.Ariz.1983); *Ward v. Schweiker,* 562 F.Supp. 1173, 1174–75 (W.D.Mo.1983); *Kauffman,* 559 F.Supp. at 373–75; *Hornal,* 551 F.Supp. at 616–17; *Ocasio v. Schweiker,* 540 F.Supp. 1320, 1322–23 (S.D.N.Y.1982). We therefore hold that in these circumstances the fact that Cornella was represented by counsel on a *pro bono* basis does not preclude an award of fees under the EAJA.

**OTHER ISSUES**

The Secretary alleges several other grounds for denying Cornella's application for attorneys' fees.[14] The district court did not reach these issues since it held an award of fees was precluded on other grounds. Because they involve purely questions of law, we will address the Secretary's contentions without remanding the issues for determination by the district court.

The Secretary contends that the EAJA does not apply to claims filed pursuant to Title II of the Social Security Act. She relies on the language of the statute that attorneys' fees are allowed "[e]xcept as otherwise provided by statute...." 28 U.S.C. § 2412(d)(1)(A). The Secretary claims that since the Social Security Act specifically provides for the payment of fees and states

that "no other fee may be payable," 42 U.S.C. § 406(b)(1), an award of fees pursuant to the EAJA would contravene the very terms of the two Congressional Acts involved.

█ We disagree with the contention that the EAJA does not apply to Social Security Act cases. What the Secretary's argument ignores is that the Social Security Act does not permit a claimant to recover fees against the government; it only allows a representative of the claimant to take attorneys' fees from the claimant's award of benefits. As the Fourth Circuit recently noted:

> The legislative history [of the EAJA] indicates the conditional language applies only to existing fee-shifting statutes where awards against the government are authorized. Because 42 U.S.C. § 406(b)(1) is not a fee-shifting statute and does not provide for the award of attorney's fees against the government, the conditional language of the EAJA does not foreclose its application to Social Security Act cases.

*Guthrie v. Schweiker,* 718 F.2d 104 at 107–108 (4th Cir.1983) (footnotes and citations omitted).

Moreover, the legislative history of the EAJA indicates that Congress intended the Act to cover civil actions to review decisions of the Secretary. A House Report provides that "[t]here was much discussion whether the United States should be liable when it is a named party and represented in a civil action under the Social Security Act. The Committee decided that civil actions should be covered." H.R.Rep., *supra,* at 12, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4991. We, therefore, hold that the EAJA applies to Social Security Act cases.[15]

---

**14.** Cornella argues that the Secretary is precluded from urging these grounds based on principles of collateral estoppel. He contends that the Secretary should not be allowed to relitigate legal issues decided against the government by other federal courts in other circuits. *See* cases cited in notes 15, 16 *infra.* However, the Supreme Court recently held that the United States may not be collaterally estopped on an issue adjudicated against it in an earlier lawsuit brought by a different party. *See United States v. Mendoza,* —— U.S. ——, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984). Hence,

˙ the use of collateral estoppel in these circumstances is precluded.

**15.** *Accord Guthrie, supra; Berman v. Schweiker,* 713 F.2d 1290, 1293 (7th Cir.1983); *McGill v. Secretary of Health & Human Services,* 712 F.2d 28, 30 (2d Cir.1983); *Watkins,* 566 F.Supp. at 495–96; *Jones,* 565 F.Supp. at 53–54; *MacDonald,* 553 F.Supp. at 538; *Hornal,* 551 F.Supp. at 615; *Ocasio,* 540 F.Supp. at 1321; *Wolverton v. Schweiker,* 533 F.Supp. 420, 422–23 (D.Idaho 1982).

The Secretary next contends that no fees should be awarded for work that was performed prior to October 1, 1981, the effective date of the EAJA. The EAJA applies to any civil action that "is pending on, or commenced on or after" October 1, 1981. Section 208, 28 U.S.C. § 2412 (Supp.1982).

■ We agree with the vast majority of courts confronting the issue that attorneys' fees may be awarded for work performed prior to October 1, 1981 so long as the case was "pending" as of that date.[16] The plain language of the statute conclusively answers the Secretary's contention. *Berman,* 713 F.2d at 1296–97. Congress could have excluded pre-effective date fees had it chosen to do so. It has not done so and we will not imply such a limitation. *Id.* Finally, we note that the Supreme Court has approved fee awards for work performed before the effective date of the Civil Rights Attorney's Fees Awards Act, *Hutto v. Finney,* 437 U.S. 678, 694 n. 23, 98 S.Ct. 2565, 2575 n. 23, 57 L.Ed.2d 522 (1978), and the Educational Acts Amendments of 1972, *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 711–21, 94 S.Ct. 2006, 2016–21, 40 L.Ed.2d 476 (1974). These statutes have purposes similar to the EAJA and we believe the Supreme Court's reasoning in those cases applies here. *See Natural Resources Defense Council,* 703 F.2d at 713; *Tyler,* 695 F.2d at 77. Since it is undisputed that Cornella's claim was pending as of October 1, 1981, he may recover attorneys' fees for work performed prior to that date, subject, however, to the following discussion concerning fees incurred at the administrative level.

■ The Secretary's final contention gives us more trouble. Cornella's application for attorneys' fees includes approximately forty hours of work performed in administrative proceedings after the district court's remand. The Secretary contends that any fees incurred at the second administrative hearing are not compensable under the EAJA. After a careful review of the EAJA, its legislative history, and the cases which have addressed the issue, we conclude that fees incurred at the administrative level in Social Security cases are not compensable under the EAJA.

First, at the agency level, the EAJA covers only an "adversary adjudication." 5 U.S.C. § 504(a)(1). An "adversary adjudication" is defined as one which is "determined on the record after an opportunity for an agency hearing," 5 U.S.C. § 554, where "the position of the United States is represented by counsel." 5 U.S.C. § 504(b)(1)(C). In the remand proceedings at the agency level, the United States was not represented by counsel and therefore an adversary adjudication was not conducted within the language of the statute.

The legislative history of the EAJA supports this conclusion. In assessing the cost of the EAJA, Congress clearly indicated its intent to eliminate administrative proceedings where the United States is not represented by counsel. "[T]he Committee has eliminated non-adversary adjudications (including administrative proceedings under the Social Security Act) from the coverage of . . . this bill, and believes that this is a significant factor in reducing the cost." H.R.Rep., *supra,* at 20, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4999. "Social Security Administration (SSA) cases account for more than 91 percent of all administrative adjudication cases. SSA cases

---

16. *See, e.g., Berman,* 713 F.2d at 1294–99; *Natural Resources Defense Council,* 703 F.2d at 713; *Kay Mfg. Co. v. United States,* 699 F.2d 1376, 1378 (Fed.Cir.1983); *Tyler,* 695 F.2d at 77; *Knights of the KKK v. East Baton Rouge,* 679 F.2d 64, 67 (5th Cir.1982); *Watkins,* 566 F.Supp. at 497; *Jones,* 565 F.Supp. at 54; *San Filippo,* 564 F.Supp. at 177; *MacDonald,* 553 F.Supp. at 541; *Moholland,* 546 F.Supp. at 385; *Photo Data, Inc. v. Sawyer,* 533 F.Supp. at 350–51. Cornella argues that we have already implicitly ruled on this issue in *United States*

for *Heydt v. Citizens State Bank,* 668 F.2d 444 (8th Cir.1982). There we analyzed. an attorneys' fees request under the EAJA holding that the case was pending within the meaning of the Act. *Id.* at 446. Since that case was submitted to us on October 12, 1981, Cornella argues that any fees that may have been awarded in that case would necessarily have been incurred prior to October 1, 1981. Our holding today makes clear that we believe Congress intended to allow pre-effective date fees so long as the case was "pending" on October 1, 1981.

are not adversarial, as defined by the bill . . . ." *Id.* at 22, *reprinted in* 1980 U.S. Code Cong. & Ad.News 5001.

The Seventh and Fourth Circuits have recognized this limitation.

> The legislative history of the EAJA clearly indicates that [the claimant] is precluded from obtaining attorneys' fees for work done during the administrative stage of the case. This reflects Congress' deliberate attempt to tailor eligibility for attorneys' fees so as to minimize the cost of the EAJA.

*Berman,* 713 F.2d at 1296; *see also Guthrie, supra,* at 106 ("legislative history makes explicit Congress's intent that ... the EAJA does not apply to administrative proceedings under the Social Security Act"). We therefore conclude that Cornella may not recover attorneys' fees for work performed at the administrative level following the district court's remand order.

## CONCLUSION

In sum, we conclude that the government has failed to meet its burden of showing its position was substantially justified. We also conclude that the mere fact that Cornella was represented without charge does not preclude an award of fees pursuant to the EAJA. We hold that the EAJA applies to Social Security Act cases and that Cornella may recover fees for work performed prior to October 1, 1981 since his claim was pending as of that date. Cornella may only recover attorneys' fees, however, for services rendered in connection with the judicial proceedings. We, therefore, reverse the district court's decision and remand for a determination of the appropriate fee to be awarded.