**Paul D. HORNAL, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. 81–3832.**

United States District Court, M.D. Tennessee, Nashville Division.

Nov. 30, 1982.

Frank S. Bloch, Vanderbilt Legal Clinic, Nashville, Tenn., for plaintiff.

Robert J. Washko, Asst. U.S. Atty., Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

The matter before the Court is a claim by plaintiff for allowance of attorney fees pursuant to the Equal Access to Justice Act [EAJA]. Enacted as Title II (§§ 201–208) of the Small Business Export Expansion Act of 1980, Pub.L. 96–391, 94 Stat. 2325, codified as 28 U.S.C. § 2412. Plaintiff seeks a fee award for an action in which he successfully sought reversal of a decision by defendant, Richard S. Schweiker, Secretary of Health and Human Services [the government]. This Court, by order of May 25, 1982, awarded plaintiff summary judgment and remanded his claims to the government for the purpose of establishing a period of disability and payment of benefits pursuant to Title II of the Social Security Act, as amended, and payment of benefits as allowed by Title XVI of the same Act. 42 U.S.C. §§ 416(i), 423(d) and 1382c(a)(3). There is no dispute that plaintiff is a prevailing party within the meaning of the EAJA. The government resists any attorney fee award on three grounds. First, the EAJA does not apply because the attorney fee provision of the Social Security Act provides the exclusive remedy in social se-

**614**

curity cases.[1] Second, plaintiff's counsel, Vanderbilt Legal Clinic, is not entitled to recovery of fees because no fees were "incurred." Third, there was substantial justification for the government's position in plaintiff's original suit.

The three relevant statutory provisions state:

28 U.S.C. § 2412(d)(1)(A)

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Section 206 of the EAJA, 94 Stat. 2330

Nothing in section 2412(d) ... alters, modifies, repeals, invalidates, or supersedes any other provision of Federal law which authorizes an award of such fees and other expenses to any party other than the United States that prevails in any civil action brought by or against the United States.

42 U.S.C. § 406(b)(1)

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 405(i) of this title, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

### Applicability of EAJA to Social Security Proceeding

■ The government argues that the initial clause of 28 U.S.C. § 2412(d)(1)(A) read in conjunction with section 206 of the EAJA and 42 U.S.C. § 406(b)(1) prohibits application of the EAJA to the present case. Insofar as section 406(b)(1) contains a specific provision for the source and amount of attorney fees, the government believes the EAJA, by its express terms, cannot supersede the provisions of the Social Security Act. The Court disagrees. The mere fact that section 406(b)(1) contains an attorney fee provision does not place it within the statutory exclusion of the EAJA. The legislative history surrounding the EAJA makes clear the type of attorney fee provisions the EAJA can and cannot supersede:

Moreover, this section is not intended to replace or supercede any existing fee shifting statutes such as the Freedom of Information Act, the Civil Rights Acts, and the Voting Rights Act in which Congress has indicated a specific intent to encourage vigorous enforcement, or to alter the standards or the case law governing those Acts. It is intended to apply only to cases (other than tort cases) where fee awards *against the government* are not already authorized.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4953, 4997. (emphasis added) Section 406(b)(1) in no way authorizes fee awards *against the government.*

Section 406(b)(1) differs from fee shifting statutes in both purpose and effect. As noted in the legislative history above, the purpose of fee shifting statutes is to provide incentives to individuals to pursue en-

---

1. Judge Neese recognized in *Vaughn v. Califano,* 442 F.Supp. 185 (E.D.Tenn.1977), that the attorney fee provisions of 42 U.S.C. § 406(b) (Title II) are applicable to Title XVI claims. Thus, this Court's discussion of the applicability of the EAJA to Title II shall be dispositive of claims under Title II or Title XVI.

forcement of their rights. This is also the purpose of the EAJA, a fee shifting statute.

The bill rests on the premise that certain individuals ... may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights. The economic deterrents to contesting governmental action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government. The purpose of the bill is to reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States, unless the Government action was substantially justified. Additionally, the bill ensures that the United States will be subject to the common law and statutory exceptions to the American rule regarding attorney fees. This change will allow a court in its discretion to award fees against the United States to the same extent it may presently award such fees against other parties.

*Id.* at 4984. Congress enacted section 406(b)(1) for two purposes quite different from those of the EAJA: (1) to control the charging of "inordinately large fees" by claimant's attorneys and (2) to give assurance to attorneys that they would receive appropriate fees for their representation. *See* S.Rep. No. 404, 89th Cong. 1st Sess., *reprinted in* 1965 U.S.Code Cong. and Ad. News 1943, 2062. The effect of fee shifting statutes differs from section 406(b)(1) as to who must ultimately pay attorney fees and other expenses. Under fee shifting statutes, the government must pay. Under section 406(b)(1), however, it is always the claimant who pays; the only question being whether the attorney is paid directly from the judgment. Thus, the provisions of section 406(b)(1) do not "otherwise specifically provide" for fees to be awarded *against the government.*

Finally, the legislative history of the EAJA evidences Congress' intent that the EAJA does cover civil actions to review decisions of the Social Security Administration. The House Report acknowledges: "There was much discussion whether the United States should be liable when it is a named party and represented in a civil action under the Social Security Act. The Committee decided that civil actions should be covered." H.R.Rep. No. 1418, *supra,* at 4991. It would be ironic, at the very least, for Congress to expressly state its intention that the EAJA apply to social security cases if it also intended for section 406(b)(1) to preempt the fundamental fee shifting provisions of the EAJA in these same cases. Such a position is untenable. Thus, the Court follows the holding of Chief Judge L. Clure Morton in *Scruggs v. Schweiker,* No. 80–3041 (M.D.Tenn. October 28, 1982), that the provisions of 28 U.S.C. § 2412(d) may indeed apply to claims arising under Title II of the Social Security Act.[2]

### *Necessity that Plaintiff has "Incurred" Liability for Attorney Fees*

Section 2412(d)(1)(A) of the EAJA authorizes awards to a prevailing party, of attorney fees and expenses "incurred" by that party in any civil action brought against the United States. The government argues that insofar as plaintiff is represented by the Vanderbilt Legal Clinic, he is not responsible for compensating counsel for their efforts and thus, he has not "incurred" any liability for fees. The government relies solely on *Kinne v. Schweiker,* Civ. No. 80–81 (D.Vt. June 30, 1982) (currently pending on a Motion to Alter or Amend Judgment). Any such reliance is unpersuasive. The *Kinne* court based its holding on the belief that:

Plaintiff's request for attorney fees can be granted only if an examination of the

---

**2.** *Accord, Ocasio v. Schweiker,* 540 F.Supp. 1320 (S.D.N.Y.1982); *Wolverton v. Schweiker,* 533 F.Supp. 420 (D.Idaho 1982); *Berman v. Schweiker,* 531 F.Supp. 1149 (N.D.Ill.1982).

*But see Nichols v. Schweiker,* No. C–81–818R (W.D.Wash. Apr. 8, 1982); *Ritchie v. Schweiker,* No. C–80–4053 (N.D.Iowa Dec. 18, 1981).

EAJA's legislative history reveals that Congress intended to imbue "incurred" with new meaning. We glean no such intention. Neither the House, nor Senate, nor House Conference Reports define the term or indicate whether Congress contemplated fee awards to parties represented by public interest lawyers.

*Id.* at 4.

The House and Senate reports may not define "incurred," however, they make abundantly clear Congress' intent that "incurred" not be limited to mean only the money actually owed to attorneys. The House Report states:

> In general, consistent with the above limitations, the computation of attorney's fees should be based on prevailing market rates without reference to the fee arrangements between the attorney and client. The fact that attorneys may be providing services at salaries or hourly rates below the standard commercial rates which attorneys might normally receive for services rendered is not relevant to the computation of compensation under the Act. In short, the award of fees is to be determined according to general professional standards.

H.R.Rep. No. 96–1418, *supra,* at 4994. *See also* S.Rep. No. 96–253, 96th Cong., 1st Sess. 1 (1979) at 16–17. Accordingly, the EAJA specifies that the amount of fees awarded shall be based on prevailing market rates, not exceeding seventy-five dollars per hour absent any special factors that justify a higher fee.[3] Thus, if an attorney charged a client forty dollars per hour, the EAJA would permit payment of a fee calculated at seventy-five dollars per hour, even though the client never legally "incurred" liability for the additional thirty-five dollars per hour. The Court can discern no reason why this logic is not compelling, whether an attorney charges forty dollars per hour, ten dollars per hour or represents the plaintiff on a *pro bono* basis. Several courts have awarded attorney fees under the EAJA

when the plaintiff was represented without charge. *See, e.g., Ocasio v. Schweiker,* 540 F.Supp. 1320 (S.D.N.Y.1982); *Underwood v. Pierce,* 547 F.Supp. 256 (C.D.Cal.1982).

Courts have consistently awarded attorney fees under fee shifting statutes similar to the EAJA when the plaintiff was represented without charge. In fact, in *Washington v. Seattle School District No. 1,* —— U.S. ——, —— n. 31, 102 S.Ct. 3187, 3204 n. 31, 73 L.Ed.2d 896 (1982), the Court recognized that, ". . . the Courts of Appeals have held with substantial unanimity that publicly-funded legal services organizations may be awarded fees." *See generally Rodriguez v. Taylor,* 569 F.2d 1231, 1244–46 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). Specifically, interpreting similar statutes involving the term "incurred," several courts have granted a fee award even when the plaintiff was represented without charge. The Freedom of Information Act provides:

> The Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

5 U.S.C. § 552(a)(4)(E). In *Cunningham v. F.B.I.,* 664 F.2d 383, 385 n. 1 (3d Cir.1981), the court noted that while the phrase "reasonably incurred" limits the recovery of fees to those litigants who have reasonably incurred them, it pointed out that this would not "foreclose an attorney fee award for a litigant represented by an attorney who, for whatever reason, does not charge the litigant for the services rendered." The courts in *Crooker v. U.S. Department of Treasury,* 634 F.2d 48 (2d Cir.1980) and *Consumers Union of United States v. Board of Governors of Federal Reserve System,* 410 F.Supp. 63 (D.D.C.1975), reached the same conclusion in similar Freedom of Information Act claims. For the foregoing reasons, this Court believes the government cannot escape payment of attorney fees

---

**3.** 28 U.S.C. § 2412(d)(2)(A)(ii): "[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."

simply because plaintiff was represented, without charge, by the Vanderbilt Legal Clinic.

### Substantial Justification and Special Circumstances

The final issue for resolution is whether the government's action is "substantially justified." Both the House and Senate Reports explain that the standard is essentially one of reasonableness requiring the government to demonstrate that its case had a reasonable basis in law and fact. H.Rep. No. 96–1418, *supra,* at 4989–4990. *See also* S.Rep. No. 96–253, *supra,* at 6. However, an analysis of the standard cannot stop here. The Senate Committee on Judiciary refused to adopt an amendment which would have changed the language governing fee awards from "substantially justified" to "reasonably justified." *See* S.Rep. No. 96–253, *supra,* at 8. The legislative history further emphasizes that the standard "is intended to caution agencies to carefully evaluate their case and not to pursue those which are weak or tenuous." H.Rep. No. 96–1418, *supra* at 4993.

On the other hand, the House and Senate acknowledge:

The standard, however, should not be read to raise a presumption that the government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the government to establish that its decision to litigate was based on a substantial probability of prevailing.

H.R.Rep. No. 96–1418, *supra,* at 4990; S.Rep. No. 96–253, *supra,* at 7. Similarly, the Court agrees with the government's argument that a finding of a lack of substantial evidence does not mandate a finding that the government's position was not substantially justified. On balance, the Court adopts the finding of the court in *Berman v. Schweiker,* 531 F.Supp. 1149, 1154 (N.D.Ill.E.D.1982), wherein the court stated: "The standard falls in between the common law 'bad faith' exception and an automatic award of attorney's fees to pre-vailing parties." More specifically, the standard is slightly above one based on mere reasonableness. The Court is aware there may be few cases in which the government's action is not substantially justified. However, when there is little or no evidence supporting the government's position, the Court is obligated to award attorney fees.[4] In this manner, the Court acts in recognition of Congress' intent to guarantee certain safeguards to both the plaintiff and the government.

In the case at bar, the Court found that not only was there a lack of substantial evidence supporting the government's position, there was essentially no evidence that plaintiff could perform even sedentary work. The Court stated:

The only medical evidence in support of the Secretary's final decision is that submitted by Dr. Thurman. Dr. Thurman examined the plaintiff in July of 1980. Dr. Thurman found a blood pressure of 120/98 but otherwise he examined the plaintiff in a general fashion with apparently little or no specific attention to plaintiff's medical problem as established by the SCOR records. For example, Dr. Hollifield's extensive testing included exercise testing and blood pressure testing after such exercises. Dr. Thurman did not do that. In addition, Dr. Hollifield has supervised plaintiff's attempts to control his hypertension on the usual medicines on the market today. Dr. Thurman has not done that nor has he been privy to those tests.

It is the conclusion of this Court that Dr. Thurman's report with regard to plaintiff's hypertension and its effect on his vocational outlook is entitled to little or no weight. Frankly, taking the blood pressure by placing the cuff on each arm on only one occasion is an insignificant clinical data basis for the conclusions expressed by Dr. Thurman when compared to the clinical and test data submitted by the plaintiff.

---

4. *Accord, Wolverton, supra,* at 425.

**618**

Memorandum Opinion at 12. The record is replete with evidence of both the nature and severity of plaintiff's disability.

 Certainly, if the physicians were equally qualified, if they had examined the plaintiff for similar periods of time and if they had performed similar tests designed to diagnose the particular disability involved they could reach different, yet reasonable, conclusions. In that situation, even if the Court found a lack of substantial evidence to support the government's position, the Court could not find the government's position lacked substantial justification. However, when, as in the present case, the physician relied upon by the government performs an incomplete examination without specific attention to plaintiff's particular medical problem, (the effects of physical exertion on hypertension), the government is totally unjustified in relying on any such report in light of the overwhelming contradictory medical evidence.

Given the previous findings by this Court and applying the standards set forth in the EAJA, the Court holds that the government has failed to carry its burden of showing substantial justification for its position. Furthermore, the Court is not aware of, and the government has not presented, any "special circumstances" that would make an award of fees under the EAJA unjust.

### Amount of Fees

Frank Bloch, an attorney licensed to practice before this Court and director of the Vanderbilt Legal Clinic, submitted an affidavit indicating that he spent 15.5 hours preparing this case. He seeks compensation at the rate of $75 per hour for a total cost of $1,162.50. The Court finds the rate of compensation to be reasonable and within the statutory guidelines of the EAJA. Thus, the Court will enter an appropriate order awarding plaintiff attorney fees totaling $1,162.50.