**Cleason KAUFFMAN, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 82–0511.**

United States District Court,
M.D. Pennsylvania.

March 8, 1983.

Donald Marritz, Legal Services, Inc., Gettysburg, for plaintiff.

Frederick E. Martin, Asst. U.S. Atty., Lewisburg, Pa., for defendant.

MEMORANDUM

CALDWELL, District Judge.

Before us is the request filed by plaintiff's counsel for attorney fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Our review of the briefs, the record, and applicable law persuades us that the application for fees should be granted.

I. Background

Plaintiff was the prevailing party in an action brought under Title II of the Social Security Act. Plaintiff's action was filed pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g), for judicial review of the Secretary of Health and Human Services's final decision denying disability benefits. On November 12, 1982, we approved the report of a United States Magistrate recommending that plaintiff's motion for summary judgment be granted.

On December 13, 1982, plaintiff's counsel filed his application for attorney fees in the amount of One Thousand Dollars ($1000) based on the rate of Fifty Dollars ($50) per hour for twenty (20) hours of work. Shortly thereafter plaintiff's counsel filed supporting affidavits from two area attorneys who attested that the rate, as well as number of hours, were reasonable for this kind of matter.

In an order dated January 10, 1983, we directed that a brief from plaintiff's attorney was unnecessary and that any opposition to the application was due within ten (10) days. When an opposing brief was filed, we asked that a brief in support of fees be prepared. Review of this matter has convinced us that our initial impression on the propriety of a fee award was proper.

The attack filed by defendant is two-pronged. First, defendant contends that the award of such fees is inappropriate in the present action because plaintiff's counsel is managing attorney of a legal services office and that such offices typically provide free services for indigent clients. Second, defendant asserts that even if fee awards are proper for legal service organi-

zations under some circumstances, they should be denied in the current matter because defendant's position in denying benefits was "substantially justified." We have considered and rejected each of these arguments in arriving at our decision to award attorney fees.

## II. Attorney Fee Awards to Legal Service Organizations

Authority for attorney fee awards is found in the following EAJA provisions:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), *incurred* by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis supplied). The definition of "fees and other expenses," 28 U.S.C. § 2412(d)(1)(C), (2)(A) specifically includes attorney fees not to exceed $75 per hour except when the court finds that a higher fee is justified.

In the present case defendant has concentrated on the use of the word "incurred" in the statute to bolster his argument against a counsel fees award. Defendant contends that plaintiff did not incur fees since legal aid agencies render free services. In support of his argument, however, defendant has cited only one case, the unpublished opinion of the United States District Court for the District of Vermont in *Kinne v. Schweiker,* No. 80–81 (D.Vt., June 29, 1982) (hereinafter *Kinne II*). In that case, plaintiff was successfully represented by a law school's legal clinic, which provided free services and supplemented its limited budget through any fee awards that were permitted. In rejecting the fee application, the analysis of Judge Coffrin in *Kinne II* focused upon the meaning of the word "in-

curred" and concluded that an attorney fee award was inappropriate if a prevailing party would not be liable to compensate his counsel.

What defendant apparently did not know when he filed his brief, however, was that Judge Coffrin had subsequently reconsidered and vacated his earlier decision. In *Kinne v. Schweiker,* No. 80–81 (D.Vt., December 29, 1982) (hereinafter *Kinne III*), a copy of which was submitted with plaintiff's counsel's brief, Judge Coffrin stated that he was "persuaded that this [former] analysis was incorrect in certain key respects" and "too narrow in its focus." *Id.* at 2. In particular the *Kinne III* decision observed,

> While it is true that an individual with a patently strong case could probably retain counsel with the incentive of an EAJA award at the successful conclusion, not every strong case appears that way on first inspection and the contingent nature of EAJA awards, combined with the ambiguity of the substantial justification standard, poses an obstacle to individuals seeking representation. Because of its *pro bono* character, . . . [a legal service organization] may employ a less rigorous calculus and serve the useful function of advancing those cases which although meritorious, do not at first appear to be strong enough to warrant an EAJA fee award. To the extent it does so, and receives such an award, the primary purpose of the EAJA is served by enhancing . . . [the organization's] capability to serve financially needy individuals with claims against the government.
>
> . . . .
>
> . . . We now deem it unlikely that Congress would expressly make the EAJA applicable to social security actions without commenting on the distinction between *pro bono* and paid counsel unless it did not intend to draw the distinction.

*Id.* at 3–4.

In the interim between the decisions in *Kinne II* and *Kinne III,* another federal district court in *Hornal v. Schweiker,* 551 F.Supp. 612 (M.D.Tenn.1982), concluded

that the government was not insulated from the payment of attorney fees simply because plaintiff had gratuitous representation by a legal clinic. The *Hornal* court expressly rejected the *Kinne II* line of reasoning and cited the following language in the House Report to support its determination that fees "incurred" could be but were not necessarily amounts actually owed by a party to his attorney.

> [T]he computation of attorney's fees should be based on prevailing market rates without reference to the fee arrangements between the attorney and client. The fact that attorneys may be providing services at salaries or hourly rates below the standard commercial rates which attorneys might normally receive for services rendered is not relevant to the computation of compensation under the Act. In short the award of fees is to be determined according to general professional standards.

*Id.* at 616; H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted* in 1980 U.S.Code Cong. & Ad.News 4953, 4994. *See also* S.Rep. No. 96–253, 96th Cong., 1st Sess. 1 (1979) at 16–17. The *Hornal* court concluded that the amount an attorney charged or whether he charged his client at all was irrelevant to a fee award and cited cases decided under other fee shifting statutes as supporting awards to legal service organizations.

Although not confronted with the same circumstances as those in the present matter, the court in *Ocasio v. Schweiker,* 540 F.Supp. 1320 (S.D.N.Y.1982) recognized the right of a legal services organization to counsel fees under the EAJA. In fact, the *Ocasio* court summarily observed that indigent plaintiffs fall within the category of a "party" for purposes of the statute.

> It is stated that any fees awarded herein will be paid directly to The Legal Aid Society's Civil Division and that no individual attorney will receive any portion of the award. The Legal Aid Society qualifies as a party to the action under 28 U.S.C. § 2412(d)(2)(B) as one described in the Internal Revenue Code, 26 U.S.C. § 501(c)(3).

*Id.* at 1323 n. 12.

We have doubts about the *Ocasio* court's use of the 28 U.S.C. § 2412(d)(2)(B)(i) definition of "party" rather than the one found at § 2412(d)(2)(B)(ii),[1] but we have no problem rejecting defendant's suggestion that the plaintiff in the present matter is not within the statutory definition of party. The individual plaintiff obviously did not have a net worth in excess of $1,000,000 at the time the present action was filed and thus falls within the category of a party who may seek counsel fees.

We also have considered and found unpersuasive defendant's contentions that to award counsel fees would be to permit a double recovery. The essence of defendant's argument is that government funding of legal service organizations should preclude their receipt of fee awards from the government. The brief submitted by plaintiff's counsel points out the fallacy of this position and cites primarily the pertinent case of *Shadis v. Beal,* 685 F.2d 824 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 300, 74 L.Ed.2d 282 (1982), wherein a fee award to a legal service organization pursuant to the Civil Rights Attorney Fee Awards Act, 42 U.S.C. § 1988, was upheld. We have found significant parallels in the rationale of the *Shadis* case to the issue now before us. On the "double-dipping" argument, the court stated,

> This rhetorical ploy avoids the issue. The ... [government] does not pay "twice" when it violates someone's civil rights and is then forced to pay attorney's fees. It pays only once—as a violater of civil

---

**1.** The *Ocasio* court seemed to view the Legal Aid Society, as the seeker of counsel fees, as having to fit the statutory definition of "party." We feel instead that the proper focus is on the individual or entity who prevails against the government or agency thereof. Under 28 U.S.C. § 2412(d)(2)(B)(i), a "party" includes "an individual whose net worth did not exceed $1,000,000 at the time the civil action was filed." Our position is supported by the express language of 28 U.S.C. § 2412(d)(1)(B), which provides that a party seeking fees submit documentation from the attorney who represented or appeared for that party.

rights. Its role as a provider of public services is distinct from its role as a defendant in a civil rights case and has no bearing on the question of reimbursing individual citizens for individual wrong brought upon them.

685 F.2d at 833.

In the present matter the funding of legal service organizations is likewise distinct from requiring the government to pay counsel fees when an individual has proven his right to benefits which the government has denied. Moreover, in the EAJA fee award context, an additional safety valve for the protection of the government is embodied in 28 U.S.C. § 2412(d)(1)(A), which provides in relevant part that the court shall award fees and other expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." Therefore, having determined that EAJA attorney fee awards may properly be ordered for legal service organizations, we turn next to the substantial justification issue.

### III. Substantial Justification for the Government's Position

Guidance for determining whether the position of the government was "substantially justified" is found in the legislative history of the EAJA as well as in case law. One of the most thorough analyses is found in *Berman v. Schweiker,* 531 F.Supp. 1149 (N.D.Ill.1982) wherein attorney fees for plaintiff's privately-retained counsel were approved. In examining the standard for an attorney fee award, the court noted that when a non-governmental party prevails, the government has the burden of demonstrating that its position was "substantially justified" even though it lost the case, *id.* at 1153, and that "[t]he standard falls in between the common law 'bad faith' exception and an automatic award of attorney's fees to prevailing parties." *Id.* at 1154. The House Report described the test as "essentially one of reasonableness" and cautions courts not to conclude that the government's position was not "substantially justi-

fied" simply because the government was not the prevailing party or because it cannot show that "its decision to litigate was based on a substantial probability of prevailing." H.Rep. No. 96–1418, *supra,* at 4989–90. *See also* S.Rep. No. 96–253, *supra,* at 7.

The court in *Hornal, supra,* dealt with a factual situation similar to the one before us. In *Hornal,* the only medical evidence supporting the Secretary's denial of benefits to a hypertensive plaintiff was that submitted by a doctor who had examined plaintiff once. The doctor had taken plaintiff's blood pressure during a general examination but had performed no special tests to aid in evaluating plaintiff's condition. In contrast, another physician, who supported a finding of disability, had conducted extensive testing and had also overseen plaintiff's attempts to control his hypertension through medication. Faced with such evidence the court gave little or no weight to the conclusions on plaintiff's health and vocational outlook by the doctor who had minimal contacts with plaintiff.

Commenting further on the medical evidence, the *Hornal* court stated,

Certainly, if the physicians were equally qualified, if they had examined the plaintiff for similar periods of time and if they had performed similar tests designed to diagnose the particular disability involved they could reach different, yet reasonable, conclusions. In that situation, even if the Court found a lack of substantial evidence to support the government's position, the Court could not find the government's position lacked substantial justification. However, when, as in the present case, the physician relied upon by government performs an incomplete examination without specific attention to plaintiff's particular medical problem, (the effects of physical exertion on hypertension), the government is totally unjustified in relying on any such report in light of the overwhelming contradictory medical evidence.

*Id.* at 618. Based on similar considerations, we find that the government's stance in the

present matter was not "substantially justified." Defendant's brief argues that support for the government's position was provided through the testimony of plaintiff, a vocational expert, and a physician who examined plaintiff once at the request of the government. As the Magistrate's report noted, however, and our review of the record confirmed, plaintiff at most indicated his ability to perform a few light tasks, such as feeding his farm animals. He and his wife both testified to the severe episodes of pain he experienced and his need for frequent inactivity to gain some relief. Even discounting this evidence completely and conceding that the administrative law judge (ALJ) could have properly found these allegations were self-serving and not worthy of credibility, we are nevertheless faced with the medical evidence. In examining this testimony, we discern no need to comment on the statements of the vocational expert other than to express our feeling that he essentially was a neutral witness. In other words, his testimony regarding possible work and its availability depended on his assuming that plaintiff could perform light or sedentary work.

Focusing on the medical findings, we see that the only evidence that plaintiff could perform such work came from a doctor, who as in *Hornal, supra,* performed a one-time examination of plaintiff and checked off the "light work" portion of the form entitled "Functional Capacities Evaluation." In contrast plaintiff presented objective medical evidence from his surgeon that plaintiff's spinal canal measures 5–6 mm. against a normal of 11–12 mm. and that plaintiff's symptoms precluded him from gainful employment. Plaintiff's family physician likewise substantiated the severity of plaintiff's condition, including reference to plaintiff's two prior operations for narrowing of the spinal canal. Both of these physicians, who have seen plaintiff over a period of years, did not rely heavily on plaintiff's subjective complaints of pain but rather based their conclusions on their objective medical analyses. Under the circumstances, we reach the same conclusion as the *Hornal* court that the government's

position was not "substantially justified" in the face of "the overwhelmingly contradictory medical evidence." 551 F.Supp. at 618.

In accordance with this discussion and upon application of the standards established by the EAJA, we conclude that the government has not met its burden of showing substantial justification for its denial of benefits. In addition, the government has not asserted, and we have not *sua sponte* discovered, any "special circumstances" that would make a counsel fee award unjust. We therefore turn to the issue of the amount of fees to be granted.

## IV. Amount of Fees

Our review of various cases during the preparation of this decision indicates that the $50 per hour award sought by plaintiff's counsel is conservative. We believe it to be a reasonable hourly rate for this type of case, and the government has not sought to argue otherwise. We also find reasonable the twenty hours of time expended in the preparation of this case, including the drafting of a thoroughly researched and well-written brief in support of plaintiff's motion for summary judgment.

The only problem we have with the fee award is the number of hours claimed for research and writing of the brief in support of counsel fees. Plaintiff's attorney claims 17¾ hours. Because we had directed the government to file its brief in opposition before plaintiff's counsel was asked to file a responsive brief, we feel that plaintiff had the advantage of seeing which arguments he needed to counter. In addition, he would be aware of the government's reliance on *Kinne II, supra,* as the sole support for its argument against counsel fees for legal service organizations. Moreover, response to the argument by the government that its position was "substantially justified" would not require counsel to re-read the entire record but could be accomplished by reviewing and condensing materials presented earlier in the summary judgment motion. Under the circumstances we conclude six hours is a reasonable allowance for preparation of the brief in support of

counsel fees. Therefore, we are awarding plaintiff's counsel One Thousand Three Hundred Dollars ($1300) calculated at the rate of $50 per hour for twenty-six hours of work. An appropriate order will be entered.