**Donald F. WHEAT, Appellant,**

v.

**Margaret M. HECKLER, Secretary, Health & Human Services, Appellee.**

**No. 84–1979.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1985.

Decided June 11, 1985.

Milo Alexander, Omaha, Neb., for appellant.

Douglas R. Semisch, Omaha, Neb., for appellee.

Before LAY, Chief Judge, HEANEY and FAGG, Circuit Judges.

LAY, Chief Judge.

Donald Wheat appeals from the denial of his award of attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1982). The district court, the Honorable C. Arlen Beam, presiding, initially granted Wheat's application for attorney's fees. However, after considering a motion to reconsider filed by the Secretary of the Department of Health and Human Services, the court denied the award because "the government's position was sufficiently supported by the medical testimony and was, therefore, substantially justifiable within the meaning of the EAJA." We reverse and remand to the district court to enter judgment for attorney fees in favor of Wheat.

Wheat initially applied for disability benefits on January 20, 1976 and was subsequently awarded benefits based on a period of disability beginning August 3, 1975. Disability was based on a finding that Wheat had "chronic, severe, mixed neurosis, acute lumbar strain, secondary to trauma and osteoarthritis of the cervical spine." The Social Security Administration subsequently notified Wheat that it had determined Wheat was able to do substantial gainful activity as of August 1980, and that his eligibility for disability benefits would therefore terminate in October 1980. At Wheat's request, a hearing was held before an administrative law judge (ALJ)

on August 18, 1981. Wheat, his wife, and a vocational expert appeared and testified. On December 8, 1981, the ALJ affirmed the earlier decision that Wheat's disability ceased in August 1980. After considering additional evidence submitted by Wheat, the Appeals Council of the Social Security Administration denied a request for review on April 27, 1982, making the ALJ's decision the final decision of the Secretary.

Wheat sought review of the Secretary's decision to terminate his benefits in federal district court. The case was referred to a magistrate to make findings and recommendations as authorized by 28 U.S.C. § 636(b)(1)(B) (1982). The magistrate recommended reversal of the Secretary's decision and reinstatement of Wheat's benefits. The district court adopted the magistrate's findings and recommendations in an order dated February 29, 1984. The Secretary did not appeal. Wheat then filed an application for attorney's fees pursuant to the EAJA. The district court found the Secretary's position was substantially justified and denied the award of attorney fees.

**Background**

Wheat's extensive medical record at the time of the Secretary's re-examination of his condition in 1980 revealed Wheat had suffered for 26 years from emotional problems. He had been hospitalized in the years 1957–58, 1960–61, 1971–72, 1974, and 1975. A series of medical reports prepared by two treating physicians (Dr. Bhatia and Dr. Jamison), and three consulting physicians (Drs. O'Neil, Sudduth, and Goldberg) and a psychologist (Mr. Leonard) selected by the Secretary, were submitted to the ALJ for purposes of evaluating Wheat's condition at the time of and subsequent to the July 1980 termination notice. While the medical reports revealed some evidence of arthritis and hiatal hernia with some resultant pain, they indicated Wheat's primary impairment is an emotional or functional nonpsychotic mental disorder. Dr. Bhatia, a psychiatrist who has treated Wheat since July 1978, diagnosed Wheat's condition as: (1) depressive reaction, (2) passive-dependent personality, and (3) hy- pochondriacal neurosis. Dr. Bhatia examined Wheat again on February 13, 1981, and reported further deterioration in Wheat's personal habits and a greater degree of depression. At that time Dr. Bhatia described Wheat as "angry, agitated, restless and anxious," and concluded it was "doubtful" whether Wheat could ever hold gainful employment.

Dr. Jamison, who saw Wheat approximately fourteen times in 1981, diagnosed Wheat's condition as a personality disorder with multiple psychiatric problems, depression, arthritis, and a hiatal hernia. Dr. Jamison stated that although Wheat's osteoarthritis would not, by itself, prevent him from being gainfully employed, his psychiatric impairment did foreclose such employment. Two consulting psychiatrists and an orthopedic surgeon who examined Wheat at the Secretary's request confirmed that Wheat suffered from a personality disorder. Dr. Sudduth examined Wheat on August 18, 1980 and reported that Wheat's behavior was consistent with histrionic personality disorder which is characterized by a tendency to exaggerate physical symptoms. Dr. Goldberg examined Wheat on October 1, 1981 and concurred in the earlier diagnoses of an "overanxious individual with a reactive depression with an underlying personality structure of passive dependency and inadequacy." Dr. O'Neil, an orthopedic surgeon, examined Wheat on August 4, 1980 for evaluation of low back pain. He reported that Wheat "has degenerative lumbar disc disease by history and findings," but "his major disability is a psychiatric problem with severe anxiety and functional overlay." Dr. O'Neil concluded: "I do not feel that he is capable of any employment at the present time." Two additional reports were submitted to the Appeals Council following the ALJ's decision. After examining Wheat on January 28, 1982, Dr. Sun reported: "his psychiatric disturbance is severe enough to make him a non-functioning individual in terms of working and supporting himself in his work." After examining Wheat on January 13, 1982, Dr. Yadalam and Dr. Swanson reported that he

"gives a long history of crying spells, alteration in sleep rhythm, lack of enthusiasm and interest in his daily activities, decrease in energy and sex drive, and recently suicidal ideations."

At the administrative hearing in August 1981, Wheat testified he was unable to work because of arthritis and nerves. He described pain in his lower back and legs which he attributed to arthritis; he also related he takes medication, wears support stockings, and walks with a cane. His last job was as a laborer/steel press operator in 1974–75; he also previously worked as a steel cutter, loader, truck driver, farm laborer, and gas station attendant. He described a number of on-the-job accidents caused by pressure which allegedly makes him accident prone. Wheat testified he can sit for one hour, stand or walk for 15 to 20 minutes, and lift 10 to 15 pounds. His daily routine consists of watching television, listening to music, visiting friends, maintaining his car, and doing housework. Mrs. Wheat corroborated her husband's testimony regarding his complaints of pain and restless sleep. A vocational expert also testified at the ALJ hearing by responding to hypothetical questions phrased by the ALJ. The ALJ asked the vocational expert to assume as true the findings contained in the medical evidence and to consider Wheat's age, education, work experience, and transferable skills. The expert responded that in his opinion Wheat could not perform his past work nor were there any other jobs in the area he could perform. He reasoned that the evidence revealed Wheat's condition has remained relatively unchanged since 1975. The ALJ then changed the hypothetical by instructing the expert to consider only the medical evidence since August 1980. In response, the vocational expert stated Wheat could perform some unskilled light or sedentary work such as packaging, cleaning, or janitorial work. The ALJ then asked the vocational expert to assume Wheat and his wife's testimony as true; the expert responded there would be no jobs Wheat could perform.

The ALJ reviewed the "current" medical evidence (dating from July 1980), the hearing testimony, and his personal observations of Wheat at the hearing, and found Wheat's disability ceased in August 1980. The ALJ recognized Wheat did suffer from the physical and mental impairments described in the medical reports; however, those impairments were "not of such severity as would preclude the performance of substantial gainful activity." The ALJ found no medical evidence supporting Wheat's physical complaints, and therefore focused on Wheat's primary limitation—his emotional condition. The ALJ related the required manifestation findings for functional nonpsychotic disorders that are considered disabling as set forth in the Secretary's regulations. Finding Wheat was only "moderately" restricted in his ability to respond appropriately to supervision, coworkers and customary work pressures, and to perform simple, complex, repetitive and varied tasks, the ALJ concluded that Wheat's "emotional impairment has not been of such severity as would have precluded the performance of all types of substantial gainful activity."

**Analysis**

Under the EAJA a prevailing party may be awarded attorney's fees if the position of the United States was not "substantially justified."[1] The test of whether the government's position is substantially justified is one of reasonableness in law and fact[2] and the United States has the

1. 28 U.S.C. § 2412(d)(1)(A) (1982) provides:
   Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdic-

tion of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

2. The legislative history of the EAJA provides:
   The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Govern-

burden of showing the substantial justification of its position. *Cornella v. Schweiker*, 728 F.2d 978, 981–82 (8th·Cir.1984).

We note at the outset that the burden of proof in the benefit termination proceeding rested with Wheat to show that his disability continued and that he remained entitled to benefits. *Weber v. Harris*, 640 F.2d 176, 177 (8th Cir.1981). In *Weber*, this court considered whether the Secretary could properly terminate benefits, after having earlier found a disability. In doing so, the court quoted *Miranda v. Secretary of Health, Education and Welfare*, 514 F.2d 996, 998 & note (1st Cir.1975):

> [O]nce having found a disability, the Secretary may not terminate the benefits without substantial evidence to justify so doing. This will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was at first supposed.*

> \* \* \* \* It would be wrong for the Secretary to terminate an earlier finding of disability on no basis other than his reappraisal of the earlier evidence. However, many impairments are difficult to diagnose; a proper diagnosis may require reference to the cumulative medical history. The Secretary may grant a disability on the basis of a subjective complaint and tentative diagnosis pending the accumulation over time of sufficient indicia for a more complete evaluation. At a termination hearing, the Administrative Law Judge may appropriately contrast the relative strength or weakness of earlier medical evidence and relevant earlier events with claimant's current condition.

*Weber*, 640 F.2d at 178–79. To justify the decision to terminate Wheat's benefits, therefore, the Secretary claims the current

> ment can show that its case had a reasonable basis both in law and fact, no award will be made. \* \* \*
> Certain types of case dispositions may indicate that the Government action was not substantially justified. A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict or where a prior suit on the same claim had been dismissed. Such cases clearly raise the possibility that the Government was unreasonable in pursuing the litigation.

medical evidence revealed Wheat's condition had improved or was not as serious as first supposed. The specific evidence most obviously relied on by the ALJ was the vocational expert's opinion elicited through hypothetical questions.

The only hypothetical to which the vocational expert responded that Wheat could perform some work *excluded* Wheat's extensive medical history prior to August 1980, his present age, education, work experience, transferable skills, and his testimony regarding pain. Based on our review of the evidence, we find no valid reason for excluding these factors from the hypothetical. The Secretary argues the ALJ was justified in referencing only the post-August 1980 medical reports because the Secretary's position was that Wheat's disability ceased as of August 1980, and therefore those reports were most relevant to the case. To determine if a claimant's condition has improved or is not as serious as first supposed, however, we think it only reasonable to consider and compare the claimant's prior and present conditions, taking into account the claimant's medical history as well as current medical evidence. Unduly fragmenting the evidence of record may lead to contradiction in opinion testimony. *See Camp v. Schweiker*, 643 F.2d 1325, 1333 (8th Cir.1981) (quoting *Lewis v. Califano*, 574 F.2d 452, 456 (8th Cir.1978) ("[e]vidence as to claimant's impairments must be considered as a whole and cannot be fragmented so as to diminish their combined impact.")). This is precisely what occurred here. Taken together, the vocational expert's responses indicated that Wheat's condition had remained relatively unchanged since 1975; that Wheat could

> The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.
> H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10–11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4989–90.

not perform any work assuming as true all of the medical evidence, his age, education, work experience, transferable skills, and his subjective complaints of pain; but that he could perform substantial gainful employment considering only the current medical evidence. We find it unreasonable for the Secretary to have relied on the self-contradictory statement of the vocational expert, given the nature of the question posed to him and the balance of his testimony. *See Cornella,* 728 F.2d at 984 (unreasonable to focus on isolated part of evidence and ignore other evidence of disability); *Daniels v. Mathews,* 567 F.2d 845, 848 (8th Cir.1977) ("We think it fundamental, when the ALJ uses a hypothetical question in examining the vocational expert, that the ALJ relate with precision the job capacity and opportunity to the physical and mental impairment of the particular claimant.") (footnotes omitted); *Kauffman v. Schweiker,* 559 F.Supp. 372, 376 (M.D. Pa.1983); *Hornal v. Schweiker,* 551 F.Supp. 612, 618 (M.D.Tenn.1982).

■ The ALJ also found Wheat's testimony concerning pain and mental impairments lacking in credibility. The ALJ states Wheat's complaints were carefully considered but were not sufficiently supported by the current medical evidence, Wheat's statements regarding his physical activities, and the ALJ's personal observations of Wheat during the hearing. This court has consistently held that the Secretary may not disregard subjective symptoms solely because there exists no objective evidence in support of such complaints. *Cole v. Harris,* 641 F.2d 613, 615 (8th Cir. 1981); *Brand v. Secretary of Health, Education and Welfare,* 623 F.2d 523, 525–26 (8th Cir.1980); *Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir.1978). Moreover, while an ALJ may discredit a claimant's subjective complaints of pain, legitimate

reasons for disbelief must be articulated. *Tome v. Schweiker,* 724 F.2d 711, 713 (8th Cir.1984). The ALJ's decision fails to point out specific inconsistencies in the medical evidence or in Wheat's testimony or activities. Simply because Wheat can sit for an hour, stand and walk for 20 minutes, watch television, visit with friends, and do simple housework does not mean he is capable of being gainfully employed. The Secretary argues it was reasonable to discredit Wheat's complaints of pain in light of Dr. Sudduth's report stating that Wheat exaggerated his symptoms. However, Dr. Sudduth diagnosed Wheat's behavior as a histrionic personality disorder. Thus, Wheat's tendency to exaggerate his symptoms, if he has such a tendency, could very well be a symptom of his mental impairment, rather than a deliberate attempt to overstate his symptoms in order to malinger. We find no evidence in the record that contradicts Wheat's complaints of disabling pain, and the Secretary failed to identify any specific statement or other piece of evidence that casts doubt on Wheat's stated symptoms to support her credibility findings.

Finally, we examine the Secretary's application of her own regulations; specifically, her conclusion that Wheat did not meet the criteria contained in the listing of impairments for nonpsychotic mental disorders, 20 C.F.R. pt. P, app. 1, § 12.04 (1984), which the Secretary has "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525(a) (1984). After reviewing the applicable regulations, the ALJ apparently found Wheat did not meet criterion (B) of § 12.04, which requires "[r]esulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people."[3] We find, as

---

**3.** The ALJ stated:

In the instant case, the Claimant has been found only mildly restricted to his daily activities, interests, and ability to understand and carry out instructions. Even though Dr. Goldberg felt that Mr. Wheat is "moderately" restricted in his ability to respond appropriately to supervision, co-workers and customary

work pressures; as well as in his ability to perform simple, complex, repetitive and varied tasks; the term "moderate" as defined in the Social Security Administration's standard form HA–528 does not indicate any significant limitation in one's ability to function. Thus, based upon the current evidence of record, the undersigned Administrative Law

did the magistrate reviewing the Secretary's decision to terminate Wheat's benefits, that the Secretary disregarded the overwhelming weight of the evidence in concluding Wheat did not meet the criteria listed in § 12.04 for functional nonpsychotic disorders. The medical reports consistently diagnosed Wheat's condition as a psychiatric problem encompassing depression and an anxiety neurosis of such severity as to be disabling. The magistrate described the evidence as:

> specific in its recitations that plaintiff's condition is manifested by persistent periods of anxiety and depression accompanied with tension, apprehension, interference with concentration and memory, insomnia and suicidal preoccupation; there is resultant marked restriction of daily activities, constriction of interests, and deterioration of personal habits. The oral testimony adduced at the hearing is in no respect contradictory of or inconsistent with the report evidence.

We agree the evidence supports a finding that Wheat met the listing of impairments and was therefore disabled. The ALJ's reliance on Dr. Goldberg's response to a Residual Functional Capacity form, indicating Wheat was "moderately" restricted in work-related abilities, was unreasonable in light of the overwhelming evidence that Wheat met the criteria in § 12.04. Moreover, we have stated before that "[a]lthough such forms are admissible, they are entitled to little weight in the evaluation of disability." *Gilliam v. Califano*, 620 F.2d 691, 693 (8th Cir.1980).

 In addition, Wheat argues that upon finding his impairment did not meet the listing, the ALJ simply concluded he was not disabled. Wheat claims the ALJ failed to consider his residual functional capacity, his age, education, or work experience, as required by 20 C.F.R. § 404.1520 (1984). We do not find the ALJ failed to consider Wheat's residual functional capacity because the record does indicate the ALJ

examined the vocational expert regarding Wheat's ability to perform certain work. However, we do note that the ALJ failed to explain in his written opinion on what basis he found Wheat could perform substantial gainful activity. In determining whether a claimant has the residual functional capacity to do certain work, it must be kept in mind that he or she must be able to "perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (footnote omitted). We find no substantial evidence in the record as a whole to support the ALJ's finding that Wheat could perform substantial gainful work, even of the "sedentary" type to which the ALJ refers. The Secretary's decision to terminate Wheat's benefits was not only unsupported by substantial evidence, it was unreasonable in view of the overwhelming evidence that Wheat was disabled and the lack of any evidence that Wheat could perform substantial gainful work activity.

Because the government has failed to show a reasonable basis in fact and in law for its position, and because there are no "special circumstances" that would make an award of attorney's fees unjust, we conclude an award of fees under the EAJA is required. We therefore reverse the district court's decision and remand for a determination of the appropriate fee to be awarded.

---

Judge finds that, since at least August 1980, the Claimant's emotional impairment has not been of such severity as would have precluded the performance of all types of substantial gainful activity.