Henry MEBANE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 89–1929.

United States District Court, District of Columbia.

April 6, 1992.

Roger Johnson, Lisa Riggs Martin, Koonz, McKinney, Johnson & Regan, Washington, D.C., for plaintiff.

Madelyn E. Johnson, Asst. U.S. Atty., Washington, D.C., for U.S.

Michael Bromwich, Scott Perlman Mayer Brown & Platt, Washington, D.C., for defendant-petitioner Turner.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This case comes before the Court on Defendant Kenneth L. Turner's Application for Attorneys' Fees, Other Expenses and Bills of Costs. Turner, a Federal Protective Service police officer at the time of the events in this case, seeks recovery of his fees and costs from the United States pursuant to the Equal Access to Justice Act ("EAJA"). *See* 28 U.S.C. § 2412(d); *see also* Fed.R.Civ.P. 54(d); Local Rule 214. The Court finds that Turner is entitled to a portion of the fees and costs for which he has petitioned under EAJA. Therefore his petition will be granted against the United States in the amount of $60,447.67.

## BACKGROUND

A summary of the procedural history and alleged facts underlying this action is necessary. Plaintiff, Henry Mebane, brought this action as a result of injuries he allegedly sustained when his motorcycle crashed after a high-speed chase involving Mebane and Turner. Turner, who observed Mebane speeding while on duty in the Pentagon parking lot, pursued Mebane into the District of Columbia, where he saw Mebane speed through a traffic signal and scatter pedestrians. Turner attempted to stop Mebane, but Mebane allegedly sped away, continuing to ignore both Turner and the traffic signals he encountered. The crash occurred while Turner was pursuing Me-

bane in the District. Turner was on duty at the time and was in a police vehicle.

In his original complaint, Plaintiff named both the United States and Turner as Defendants in the action. The complaint alleged that, in pursuing Mebane, Turner was both negligent (Count I) and deprived Mebane of Due Process in violation of his constitutional rights (Count III). The United States was charged with negligent training and supervision of Turner (Count II).[1]

Under the Federal Liability Reform and Tort Compensation Act ("Act") of 1988, a plaintiff's exclusive remedy for a common law tort committed by a Federal employee acting within the scope of employment is an action against the United States pursuant to the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. §§ 1346, 2671 *et seq.* Upon certification by the government that the Federal employee was acting within the scope of his employment, the employee is automatically dismissed from the complaint and the United States substituted as a defendant. *See* 28 U.S.C. § 2679(d)(1). In this case, however, the United States refused to certify that Turner acted within the scope of his employment while pursuing Mebane. Because the United States refused to certify that Turner was acting within the scope of his employment and because Turner could not afford an attorney, this Court was forced to appoint a member of the bar to defend Turner as *pro bono* counsel on both Count I and Count III.

Turner's counsel conducted discovery and filed two motions in the case. Turner made a motion under 28 U.S.C. § 2679(d)(3), which permits the Court to certify that the government employee was acting within the scope of his employment when the government refuses to do so. The United States vigorously opposed that motion on the merits. After briefing and argument, however, Turner's motion to certify that he acted within the scope of employment was granted. This Court found that the United States erred when it decided that Turner had not acted within the scope of his employment, and the United States was substituted for Turner in Count I.

Turner simultaneously filed a motion to dismiss or for summary judgment as to any claims left against him after the Court's ruling on the motion to certify the scope of employment.[2] Pursuant to that motion the Court dismissed Count III, alleging a Constitutional tort against Turner. Thus, Turner is no longer a defendant in the case and the United States is named in the negligence count pursuant to the FTCA. Turner now petitions this Court to award him the attorney's fees and costs which he incurred during the period of time when the government wrongly refused to certify that he was acting within the scope of his employment.

## DISCUSSION

### I. *Count I:*

■ Under the Equal Access to Justice Act:

"[A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection [2412] (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States ... unless the

---

1. Plaintiff has since withdrawn Count II alleging negligent training and supervision on the part of the United States.

2. The United States also filed a motion to dismiss or for summary judgment. In that motion the United States adopted Turner's argument on the merits of Mebane's claim, specifically with respect to Mebane's contributory negligence. *See* Defendant United States' Memorandum in Support Motion to Dismiss or for Summary Judgment at 6, fn. 3. Although the Court found

that Mebane's alleged contributory negligence was a factual issue best resolved at trial, Turner's legal research and argument, as adopted by the United States, will no doubt continue to benefit the United States at trial. The United States also adopted the witness list as set out in Turner's Pretrial Statement and will continue to benefit from the factual discovery and trial preparation done by Turner's lawyers. *See* Transcript of Pretrial Conference, November 18, 1991 at 24. ("Tr.").

court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

28 U.S.C. § 2412(d)(1)(A). Turner petitions this Court for the fees he incurred between the time the United States refused to certify that he was acting within the scope of his employment and the time when this Court granted his motion and found that the United States had been incorrect in denying that certification.

Turner is clearly a "prevailing party" in a civil action as is required by EAJA. A party must have "succeed[ed] on any significant issue in litigation" in order to qualify as a prevailing party. *Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 776 F.2d 1066 (D.C.Cir.1985). With respect to Count I Turner prevailed on his motion asking the Court to find that he was acting within the scope of employment. No issue could have been more important to Turner. As a result of that motion Turner is no longer a party to Count I. The United States, despite its vigorous opposition, has assumed his place in the litigation in its capacity as Turner's employer. Any judgment which is awarded on Count I will be paid by the United States, not Turner. All future costs of defending on Count I will be born by the United States, not Turner. Thus, Turner has prevailed on the issue in this case of the greatest importance to him and is a prevailing party under EAJA.

■ The United States was not "substantially justified" in its position that Turner was acting outside the scope of his employment at the time Plaintiff was injured. In order to prevail under EAJA the United States must show that its position had "a reasonable basis in both law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988); *see also Jones v. Lujan*, 887 F.2d 1096, 1098 (D.C.Cir.1989). The United States has not met that burden in this case.

As this Court found "under any test ... [Turner] was clearly acting within the scope of his employment" in pursuing Mebane. Tr. at 12. The United States conceded that Turner was on duty at the time of the crash. It also conceded that a Federal Protection Officer had the authority to pursue certain alleged lawbreakers off the Pentagon grounds. The United States took the position, however, that it would not certify that Turner acted within the scope of his employment because Turner did not comply with the letter of certain GSA regulations.

The Court found that this cramped notion of Turner's scope of employment was "clearly" unsound both practically and legally. Tr. at 12. The United States argued that regardless of what laws Turner might have seen Mebane violate during his initial pursuit, Turner should have turned around and broken off the pursuit when Mebane reached the District. That position casts Turner in the role of a "watch dog" chained tightly to a stake. While the officer may appear foreboding to those who do not know his limitations, in reality he is on a short "leash" and somewhat powerless. Turner allegedly saw Mebane speed out of the Pentagon parking lot then shortly thereafter saw Mebane run a traffic signal and scatter pedestrians. Effective law enforcement would be stifled if Turner was required to ignore such conduct and return to the Pentagon parking lot.

Even assuming that Turner failed to comply with GSA regulations, the United States cannot disavow all liability for its employees' actions merely because they do not follow the letter or its regulations. That notion of liability would leave the mass of citizens who interact every day with government employees at the mercy of a mountain of Federal regulations which are mysteriously formulated, seldom understood, and sometimes ignored. It is the government, not the private citizen or the government employee acting in good faith that must bear the costs where an unfortunate breakdown occurs as it is alleged happened in this instance.

For precisely this reason, both the Restatement and the common law recognize that the scope of employment extends to acts that may be technically "unauthorized" by an employer. *See* Restatement

(Second) Agency §§ 228, 229(2); *Johnson v. Weinberg*, 434 A.2d 404 (D.C.1981), *on appeal from verdict in second trial after remand*, 518 A.2d 985 (D.C.1986) (laundromat employee acted within "scope" when he shot customer); *Moseley v. Second New St. Paul Baptist Church*, 534 A.2d 346, 348 (D.C.1987) (had janitor been employed to perform "security function" his sexual assault of two girls would have been within "scope"). Unauthorized acts are especially likely to occur within the scope of employment where, as here, they are similar to or incidental to authorized conduct. Turner's actions were wholly motivated by his desire to carry out his obligations as an on duty law enforcement officer. His response to Plaintiff's conduct was precisely the type of activity he was employed to perform. He was driving an authorized government vehicle in pursuit of an alleged law breaker. Clearly he was acting within the scope of employment.

■ The United States also claims that the EAJA does not permit Turner to recover any fees from it because Mebane's case "sounds in tort" and is thus exempted by the Act. *See* 28 U.S.C. § 2412(d)(1)(A). While it is true that Mebane brought a tort action against both the United States and Turner, the issue litigated between the United States and Turner was whether Turner was entitled to the benefit of immunity under 28 U.S.C. § 2679(d). The Court determined that the United States had made an erroneous determination that Turner had not acted within the scope of employment. As a result, the Court found that Turner was entitled to the immunity conferred upon him by the statute.

This determination, which was opposed by the United States, does not "sound in tort." Rather, it involves a Congressionally mandated decision as to whether the government's waiver of sovereign immunity extends to this case and, therefore, relieves the individual employee of liability. Thus, Turner's claim in no way sounds in tort. That the Plaintiff has instituted an action under the FTCA does not mean that any ancillary action arising out of that litigation must be automatically deemed a "tort" action. Turner's § 2679 motion does not sound in tort. It involves a determination that is much more akin to an action in which a claimant has been wrongfully denied a government benefit conferred by statute. In such cases, the EAJA is routinely invoked to award reasonable attorneys' fees and costs. *See e.g., Taylor v. Heckler*, 835 F.2d 1037 (3d Cir.1987); *Wheat v. Heckler*, 763 F.2d 1025 (8th Cir. 1985).

The purpose of the tort exception to the EAJA would not be fulfilled by denying recovery to Turner in this case. "Tort cases were excluded [from the EAJA] because sponsors considered the legal remedies adequate and equitable in those cases." H.R.Rep. No. 96–1418, 96th Cong., 2nd Sess. 18 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4984, 4997. The reason that tort suits were exempted from the EAJA was that the FTCA and normal contingency fee arrangements provided adequate attorney compensation and incentives in those cases. Those other avenues for compensation do not exist in this case. Turner was originally named as a codefendant. The United States by its wrongful action denying Turner legal representation, forced Turner to retain outside counsel to obtain his rights as a government employee. As an individual defendant litigating both against the Plaintiff and the United States, Turner's defense was expensive, and he had no opportunity for a recovery of any type. The most that Turner's lawyer could—and did—achieve was to extract him from the underlying litigation.[3]

---

3. The United States points to only one case which purportedly supports its position that the EAJA prohibits an award of fees in this kind of case. In *Campbell v. United States,* 835 F.2d 193 (9th Cir.1987), the court denied the fees that a successful FTCA plaintiff incurred when he brought a separate action to recover the interest due on his tort judgment. The Court reasoned that "[i]nterest on a judgment awarded under the FTCA is an integral part of that judgment ... [and] the duty to pay interest has no existence independent of the judgment." *Id.* at 196. This Court's determination under § 2979 presents an entirely different case. This Court's statutory determination as to Turner's scope of employment is utterly separate from and has no

Were recovery of Turner's fees to be barred under the EAJA, the incentives would run in exactly the opposite direction as Congress intended. The United States could cut its litigation costs substantially by routinely denying an employee's initial request to certify he was within "the scope of employment." The employee, to avoid a potentially massive adverse litigation award, would be forced to retain private counsel to represent his interests throughout the litigation with the United States getting a "free ride" on the costs of the litigation. Indeed, in this case the United States adopted substantial portions of Turner's substantive legal work and trial preparation. The EAJA's tort exception was not meant to allow the government to become such a "free rider." Here, Turner's litigation costs were incurred solely because the United States improperly refused to certify that he was acting within the scope of his employment. In this circumstance, Turner properly invoked the EAJA to recover the reasonable fees and expenses he incurred in the litigation to defend himself until he was able to obtain a reversal of the government's decision not to represent him.

 Turner's petition will be granted with respect to Count I. In determining the amount of fees to be awarded the Court notes that the law firm of Mayer, Brown & Platt accepted the Court's *pro bono* appointment and has fulfilled the highest traditions of the bar in its able representation of Turner. That Turner's counsel initially agreed to handle this case on a *pro bono* basis does not bar recovery under the EAJA. *See Watford v. Heckler*, 765 F.2d 1562, 1567 n. 6 (11th Cir.1985). This Court, however, takes that factor into account in determining that attorneys' fees should be calculated at the statutory cap of $75 per hour instead of the claimed rate of $111.25 per hour. The Court will therefore award Turner $51,831.75 in attorneys' fees, $4,526.00 in expert fees, $1,136.92 for com-

puter research, and $2,953.00 in costs for a total of $60,447.67.

## II. *Count III*

Turner also petitions this Court for the fees which his private counsel incurred in obtaining a summary judgment against the Plaintiff on the count claiming a deprivation of Plaintiff's constitutional rights. He claims that had the United States properly certified that he acted within the scope of employment with respect to Count I, it would have also chosen to represent him on the constitutional count. Therefore, Turner petitions for the fees spent in successfully defending that count against the Plaintiff. That portion of his petition, however, must be denied.

The FTCA does not waive the United States' sovereign immunity with respect to suits based on constitutional torts. *See Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir.1989). Therefore, only Turner, not the United States, could have been named as a defendant in Count III. In addition, Section 2679(d) does not create any entitlement to representation for an employee sued in his individual capacity for an alleged constitutional tort. The decision as to whether or not to provide such representation rests with the Attorney General. Unlike the determination in an FTCA suit, the Attorney General has great discretion in making that determination, and the court has little or no role in reviewing that decision. *See Falkowski v. E.E.O.C.*, 783 F.2d 252 (D.C.Cir.1986).

Although Turner has "prevailed" on Count III it was not against the United States. Because the United States was under no obligation to represent Turner on Count III, Turner's petition must be rejected with respect to the fees and costs incurred in defending Count III.

---

bearing on the judgment of any liability under the FTCA. Indeed, this Court could rule against the United States concerning the scope of Turner's employment and yet determine the ultimate issue of liability in the government's favor.

The *Campbell* court also noted that "attorneys' fees in tort actions are often paid through contingent fee arrangements." *Id.* That is not the case here.